ADAMA v DOEHLER-JARVIS, DIVISION OF
N L INDUSTRIES, INC

Docket No. 50519. Submitted January 6, 1982, at Detroit.—Decided
April 7, 1982. Leave to appeal applied for.

Doehler-Jarvis, Division of N L Industries, Inc., closed its manu-
facturing plant in Grand Rapids and moved that plant's opera-
tions to Toledo, Ohio. Marinus Adama and other employees
brought an action against Doehler-Jarvis alleging that the
employer's consideration of the costs of supplemental pension
benefits for the Grand Rapids workers in making the decision
to close the plant constituted age discrimination prohibited
under the Fair Employment Practices Act (now the Elliott-
Larsen Civil Rights Act). In a jury trial in Kent Circuit Court,
George R. Cook, J., the defendant was found liable for age
discrimination and damages, including attorney fees, were
assessed. Defendant appealed from the finding of liability and
the award of attorney fees, and the plaintiffs cross-appealed as
to damages. *Held:*

1. The plaintiffs' cause of action is not preempted by the
National Labor Relations Act. The regulation of employment
practices is within the area of traditional state regulation. Also,
the claims which were brought herein under the Fair Employ-
ment Practices Act were different from those which could have
been brought under the NLRA. Therefore, there was no risk of

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Civil Rights § 98 *et seq.*
[2, 3] 16 Am Jur 2d, Constitutional Law § 291.
[2-4] 48A Am Jur 2d, Labor and Labor Relations § 2003.
[5, 6] 15 Am Jur 2d, Civil Rights §§ 229, 237.
     48 Am Jur 2d, Labor and Labor Relations § 1124.
     Application of state law to age discrimination in employment. 96
     ALR3d 195.
     Validity and construction of labor legislation prohibiting discrimi-
     nation on account of age. 29 ALR3d 1407.
[7] 29 Am Jur 2d, Evidence § 493.
     30 Am Jur 2d, Evidence § 1052.
[8] 15 Am Jur 2d, Civil Rights §§ 507, 508.
[9] 22 Am Jur 2d, Damages § 296.

interference with the jurisdiction of the National Labor Relations Board, and no preemption.

2. The costs involved in employing older workers, including pension costs, may be considered where a business contemplates the closing out of all operations. The crucial question is whether the consideration of an age-related factor was afforded such weight in relation to other factors so as to have been a major determinative factor that made a significant difference in the decision. If not, no violation of the Age Discrimination in Employment Act or the Michigan age discrimination laws occurred.

3. The only direct evidence showing that the pension costs were a determinative factor in the decision to close the plant was a statement allegedly made by an employee which was erroneously admitted into evidence. The statement did not qualify as an exception to the hearsay rule. Without the erroneously admitted statement it is not clear that the jury would have found that the pension costs were a determinative factor in the plant closing. The case is to be remanded for a retrial on the issue of liability.

4. The trial court properly instructed the jury on the burden of proof and on the standard for determining the existence of age discrimination. The court did not err in refusing to instruct the jury that each individual plaintiff was required to meet his individual burden of proof or to instruct that an employer may lawfully go out of business.

The judgment of liability is reversed and the case remanded for retrial on that issue.

1. Civil Rights — Labor Relations — Employment Discrimination.

An individual may bring an action based on discrimination against an employer under the Civil Rights Act of 1964 even where there would also be a right of action under the National Labor Relations Act (29 USC 151 *et seq.*, 42 USC 2000e *et seq.*).

2. Courts — Jurisdiction — Federal Preemption.

Federal preemption occurs when compliance with both federal and state regulations is not possible, when the nature of the subject matter requires federal supremacy and uniformity or when Congress intended to displace the state legislation.

3. Civil Rights — Employment Discrimination — Federal Preemption.

State employment discrimination statutes are not preempted by federal regulation.

4. Courts — Jurisdiction — Federal Preemption.

The critical inquiry in determining whether the National Labor Relations Act preempts a state regulation is whether the controversy presented to the state court is identical to or different from that which could have been presented to the National Labor Relations Board; it is only where the controversy is identical that the state court's exercise of its jurisdiction involves a risk of interference with the jurisdiction of the board.

5. Civil Rights — Age Discrimination — Pension Costs.

The costs involved in employing older workers, including pension costs, may be considered by an employer without violating the employees' civil rights with regard to age discrimination where the employer's decision involves the possible closing out of all operations.

6. Civil Rights — Age Discrimination.

The standard for determining the existence of age discrimination is that an employee may recover under the age discrimination statutes if one of the reasons for terminating his employment was his age and if, in fact, his age made a difference in determining whether he was to be retained or discharged; therefore, an age-related cost factor such as pension benefits may be involved in a decision to close out business operations, which results in terminations of employees, without violation of age discrimination laws so long as that factor does not make a significant difference in the employer's decision.

7. Evidence — Hearsay — Party Admissions — Employees — Rules of Evidence.

A statement by an employee concerning a matter within the scope of his employment made during the existence of the employment relationship is not hearsay when offered against the employer who is a party to the action (MRE 801[d][2][D]).

8. Civil Rights — Age Discrimination — Jury Instructions.

A trial court did not err by not instructing the jury in an age discrimination case on the burden of proof standard which has been recognized in race discrimination cases where that standard did not lend itself to the unique facts presented in the age discrimination case.

9. Parties — Multiple Plaintiffs — Identical Liability.

There is no necessity for each of several plaintiffs to establish a defendant's liability to them in a case where, on its facts, the liability of the defendant to each plaintiff, if found, would be

> identical to its liability to a particular plaintiff and where the individual differences between plaintiffs involve only the extent of damages to be individually assessed.

*Miller, Cohen, Martens & Sugarman, P.C.* (by *William L. Martens, Roger J. McClow* and *Renate Klass),* for plaintiffs.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *John Corbett O'Meara, Thomas G. Kienbaum, Henry W. Saad,* and *Joseph C. Marshall, III),* for defendant.

Before: BASHARA, P.J., and ALLEN and T. M. BURNS, JJ.

PER CURIAM. Plaintiffs brought this action alleging age discrimination under the Fair Employment Practices Act (FEPA), MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.,* since re-enacted in the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* The action arises as a result of defendant's closing of its automobile parts casting plant at Grand Rapids and the subsequent transfer of that business to defendant's Toledo II plant. Plaintiffs contend that defendant's consideration of the costs of supplemental pension benefits for the Grand Rapids work force in making its decision to close the Grand Rapids plant constituted discrimination on the basis of age prohibited under the FEPA.

Defendant, on the other hand, claimed that the decision to close the Grand Rapids plant was based solely on economic reasons. This was due mainly to the total decline of the zinc market which accounted for 85% of the Grand Rapids plant's business, whereas it accounted for only 25% of Toledo II's business. Accordingly, defendant closed the Grand Rapids plant and transferred much of

that business to Toledo II. It also provided a system whereby employees from Grand Rapids could transfer to Toledo in order to preserve their jobs and their pensions.

In the first phase of a bifurcated jury trial, defendant was found liable for violation of the age discrimination prohibitions. The jury, in a separate proceeding, assessed damages, including attorney fees. Defendant appeals the finding of liability and the award of attorney fees. Plaintiffs filed a cross-appeal as to damages.

I

We find no merit in defendant's contention that plaintiffs' cause of action is preempted by the National Labor Relations Act (NLRA), 29 USC 151 *et seq.*

Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.,* allows individual actions against an employer based on discrimination even where the action would be available under the NLRA. *Alexander v Gardner-Denver Co,* 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974). Federal preemption occurs when compliance with both federal and state regulations is not possible, when the nature of the subject matter requires federal supremacy and uniformity or when Congress intended to displace the state legislation. *Florida Lime & Avocado Growers, Inc v Paul,* 373 US 132; 83 S Ct 1210; 10 L Ed 2d 248 (1963). Such is not the case with state employment discrimination statutes. Title VII encourages states to exercise their powers over discriminatory employment practices. *New York Gaslight Club, Inc v Carey,* 447 US 54; 100 S Ct 2024; 64 L Ed 2d 723 (1980). Historically, states have exercised broad powers in the regula-

tion of employment practices. That subject matter, consequently, falls within the ambit of traditional state regulation. *Hillman v Consumers Power Co,* 90 Mich App 627, 631; 282 NW2d 422 (1979).

Moreover, the critical inquiry in determining whether the NLRA preempts a state regulation is not whether the state is enforcing a law relating specifically to labor relations or one of general application, but whether the controversy presented to the state court is identical to or different from that which could have been, but was not, presented to the labor board. It is only in the former situation that a state court's exercise of its jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the board. *Sears, Roebuck & Co v San Diego County Dist Council of Carpenters,* 436 US 180; 98 S Ct 1745; 56 L Ed 2d 209 (1978). Plaintiffs' claims brought under the Michigan FEPA are different from those which could have been brought under the NLRA. There is no interference with the NLRA and, thus, no preemption.

## II

A central issue in this appeal is whether an employer's consideration of pension costs in a decision to terminate a business operation in this state is a violation of the Michigan age discrimination laws.[1] This is a question of first impression for the Court.

---

[1] When plaintiffs' cause of action arose in 1975 with the closing of the Doehler-Jarvis Grand Rapids plant, the Fair Employment Practices Act, MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.,* controlled. That act read:

"Sec. 3a. It is an unfair employment practice:

"(a) For any employer, because any individual is between the ages of 18 and 60, or because of the sex of any individual, to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment." MCL 423.303a; MSA 17.458(3a).

The closest any tribunal has come to addressing this issue was in *Mastie v Great Lakes Steel Corp,* 424 F Supp 1299 (ED Mich, 1976), where the court considered an alleged violation of the Federal Age Discrimination in Employment Act (ADEA), 29 USC 621 *et seq.* In *Mastie,* two workers, who were not among those selected for work in another mill after the mill in which they were employed was shut down, alleged age discrimination based in part on the fact that their retention would have required the employer to incur higher pension costs. In finding that plaintiffs had failed to establish a case of age discrimination by a preponderance of the evidence, the court held that, when faced with a reduction in force, a company may consider a person's salary and fringe benefits in relation to other employees. The court determined that the ADEA does not contemplate that an employer must ignore employment costs or face possible charges of violation of the act. 424 F Supp 1318. The court concluded:

"Both the legislative history and Department of Labor regulations tend to support the proposition that higher labor costs associated with the employment of older employees constitute 'reasonable factors other than age' which an employer can consider when faced with possible termination of an older employee." *Id.*

The FEPA was subsequently repealed and reenacted in the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* The act now provides in pertinent part:

"Sec. 202. (1) An employer shall not:

"(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a); MSA 3.548(202)(1)(a).

We recognize the factual and legal differences between the claims in *Mastie* and those of the instant case. However, we conclude that the *Mastie* rationale, that the costs involved in employing older workers, including pension costs, may be considered where the business decision involves the possible closing out of all operations.

We find further support for this conclusion in the standard used to determine the existence of age discrimination under both the ADEA and the Michigan age discrimination law.

In *Mastie,* the court determined that the proper interpretation of the ADEA is that age must be "a determining factor" in an employer's personnel policies or practices before a violation of the act occurs. 424 F Supp 1321. This interpretation relies on *Laugesen v Anaconda Co,* 510 F2d 307, 316-317 (CA 6, 1975). There the court recited the general law relative to proximate cause in tort that there may be more than one proximate cause of an event. It held that, because there could be more than one reason for terminating an employee, a plaintiff was entitled to recover under the ADEA if one such factor was his age and if, in fact, his age made a difference in determining whether he was to be retained or discharged.[2]

This Court adopted the *Laugesen* standard as

[2] See also *Loeb v Textron, Inc,* 600 F2d 1003, 1019 (CA 1, 1979). There, the court found that the jury should have been instructed that plaintiff must prove that his age was "the determining factor" in his discharge in the sense that "but for" his employer's motive to discriminate against him because of age, he would not have been discharged.

The *Laugesen* standard and the *Loeb* rule were reconciled in *Geller v Markham,* 635 F2d 1027, 1035 (CA 2, 1980), where the court reasoned that if age discrimination were a factor which made a difference, then the employee's fortunes would have been "different" without the discriminatory action. Age discrimination was, therefore, a "but for" cause of the result which did take place. The *Geller* court articulated the standard: "Where an employer acts out of mixed motives in discharging or refusing to hire an employee, the plaintiff must show that age was a causative or determinative factor, one that

the proper burden of proof to be applied in an age discrimination suit brought under Michigan law in *Gallaway v Chrysler Corp,* 105 Mich App 1, 5; 306 NW2d 368 (1981).

Analysis of the *Laugesen-Gallaway* "determining factor" standard necessarily leads to the logical conclusion that an age-related cost factor may be involved in a decision to close out business operations, which results in the termination of employees, without violating the ADEA or the Michigan age discrimination laws. The rule is valid so long as that factor did not make a significant difference in the employer's determination to close out operations.

Consequently, in the instant case, pension costs, as an age-related factor, would only have been illegally applied if that consideration was afforded such weight in relation to the other factors considered so as to have been a major determinative factor, one that made a "significant" difference in the decision. *Gallaway, supra,* 5-6.

It should be noted that our holding on the foregoing grounds has been reached without weighing the substantial and persuasive arguments relative to the application of sound business judgment in the making of a decision to terminate a business operation.[3] We are not of the opinion that such a discussion, though relevant, is necessary to this opinion.

## III

Defendant claims the jury verdict, that it vio-

made a difference in deciding whether the plaintiff should be employed." 635 F2d 1035.

[3] *Cf. Textile Workers Union of America v Darlington Mfg Co,* 380 US 263; 85 S Ct 994; 13 L Ed 2d 827 (1965), where an employer's right to terminate his business regardless of the impact of such action on "concerted activity" under the NLRA has been upheld so long as the decision to close is motivated by other than discriminatory reasons.

lated the FEPA in making the decision to close down the Grand Rapids operation, was not supported by sufficient evidence. In support of this claim, defendant argues that, while it did consider the costs of the Grand Rapids supplemental pension plan in its deliberations relating to the proposed closing, pension costs were not the determinative factor in the decision, but only one factor among many. The record indicates that the other factors defendant considered included a decline in the market for cast zinc automobile parts for the production of which the Grand Rapids plant devoted 85-90% of its activity. It also examined the lack of profitability of the Grand Rapids plant which had operated at a deficit for four of the six years prior to its closing. It reflected on the opportunity to develop the burgeoning cast aluminum auto parts market along with consolidating the declining zinc market at Toledo II where 75-80% of production consisted of aluminum castings. It considered the opportunity to improve through consolidation the overall profitability of the entire Doehler-Jarvis Division of N L Industries and a reduction of the total amount of fixed costs throughout the division. It felt there was an opportunity to put to use production capacity at Toledo II which had hitherto gone unused and to maximize the profitability of Toledo II, which had been operating at a profit for the previous 19 years.

Countering this array of factors, plaintiffs argue that the jury was correct in finding that pension costs were a determinative factor in defendant's decision to close the plant. In support of their argument, plaintiffs point to testimony which established that the costs of the supplemental pension plan as determined by actuaries were proj-

ected to rise significantly in the near future as segments of the Grand Rapids work force grew older. They further alleged that Doehler-Jarvis executives had met with actuaries seeking projected costs of the pension plan and discussed the rising costs of the supplemental benefits. They contended that Doehler-Jarvis executives had considered "people-associated" costs and the relative ages of the Grand Rapids and Toledo II work forces at the time they were deliberating about a possible plant closing. They indicated that the Grand Rapids and Toledo II work forces did not share common seniority, and that pension cost data pertaining to the Grand Rapids work force had been prepared by Doehler-Jarvis in 1974, just prior to the decision to close the Grand Rapids plant.

All of this evidence is circumstantial. If anything, standing by itself, it may well be outweighed by the fact that no employee was refused the opportunity to apply for transfer to the Toledo plant.

The only direct evidence that the pension costs were a determinative factor in the Doehler-Jarvis decision was the testimony of Pearl Mates. Her testimony was admitted over objection as a party admission. Mates testified that Leonard Radecki, the Works Manager at the Grand Rapids plant, told her that the reason for the closing was that retirements would have cost the company millions had the plant stayed open through another contract. We note that this direct evidence was characterized to the jury by plaintiffs as a "smoking gun" in defendant's hand and was repeatedly emphasized during plaintiffs' closing argument.

Defendant contends that the trial court erred in admitting this evidence as a party admission under MRE 801(d)(2)(D) and claims that the statement should have been ruled inadmissible as hearsay. We agree.

MRE 801(d)(2)(D) provides that a statement by an employee concerning a matter within the scope of his employment made during the existence of the relationship is not hearsay when offered against the party-employer. We do not find that the statement made by Radecki concerning the reasons for the closing of the Grand Rapids plant was made within the scope of his employment. See *Union Trust Co v Parker,* 251 Mich 630, 636-637; 232 NW 360 (1930).[4] As Works Manager, Radecki was not privy to policy-making deliberations at the divisional level at Doehler-Jarvis, nor was he involved in the discussions which led to the closing of the plant. We are not convinced that the Radecki statement, which is most damaging to the Doehler-Jarvis defense, was more than simply a reflection of his own opinion or the product of another employee similarly pondering matters beyond the scope of his or her employment. Radecki denied making the statement at all. The untrustworthiness of this evidence warrants its exclusion as hearsay.

We find that the trial judge abused his discretion in admitting the Radecki statement and that its admission amounted to more than harmless error in that it constituted the only direct evi-

[4] See also *Kloosterman v Kalamazoo City Lines, Inc,* 386 Mich 430; 192 NW2d 258 (1971). We note that MRE 801(d)(2)(D) is inconsistent with the case law prior to its adoption. Under prior law, the statement was admissible against the principal or employer only upon proof that the agent or employee had authority to make the statement involved.

dence of violation of the age discrimination law. Plaintiffs emphasized the statement to a great degree in arguing their case. See *People v Hoerl,* 88 Mich App 693; 278 NW2d 721 (1979), *People v Prophet,* 101 Mich App 618; 300 NW2d 652 (1980). We are not convinced that had this statement been excluded, the jury would have found the consideration of the Grand Rapids pension costs by Doehler-Jarvis to have been a determinative factor in its decision to close the plant.

In order to undo the effect of this prejudicial error, we reverse the verdict finding liability on the part of defendant and remand this case for retrial on that issue.

## IV

Having resolved the critical issue, we turn to other matters raised regarding the liability question so that they may be more easily dealt with on retrial.

Defendant alleges that the trial judge erred in refusing to instruct on the burden of proof based on the prima facie case approach provided in *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).[5]

An adaptation of the *McDonnell Douglas* for-

[5] That decision, based on a claim of race discrimination brought under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.,* established the following formulation for a prima facie case under that act:

"This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 US 802.

mula to an age discrimination case is not without problems. This adaptation was addressed by the court in *Loeb v Textron, Inc,* 600 F2d 1003 (CA 1, 1979). The court concluded that, although *McDonnell Douglas* provides an appropriate and workable formula for the trial of age discrimination cases, it should not be used inflexibly. The court determined that the formula should not be viewed as providing a format into which all cases of discrimination somehow fit. *Id.,* 1016-1017.

We find that the *McDonnell Douglas* formula does not lend itself in any form to the unique facts presented in this case. Had the instruction been given as requested, we fear the jury would only have become confused. The trial judge did not err in refusing to instruct on a *McDonnell Douglas*-based formula, but properly presented the jury with the burden of proof standard recognized by this Court in *Gallaway v Chrysler Corp, supra.*[6]

[6] The problem involved in applying a prima facie case standard in this case can be further seen through the analysis provided in *Schipani v Ford Motor Co,* 102 Mich App 606, 617; 302 NW2d 307 (1981):

"Because there are no Michigan cases which delineate what constitutes a *prima facie* case of age discrimination, it is appropriate to examine the consideration given race discrimination by the appellate courts of this state. This is reasonable because the same statute prohibits both age and race discrimination. There appear to be at least two types of the latter. (1) Disparate treatment. To make a *prima facie* showing of discrimination, the one alleging disparate treatment must show that he was a member of the class entitled to protection under the act and that, for the same or similar conduct, he was treated differently than one who was a member of a different race. *Pompey v General Motors Corp,* 385 Mich 537, 542, 549; 189 NW2d 243 (1971). (2) Intentional discrimination. Here, plaintiff must show that he was a member of the affected class, that he was discharged, and that the person discharging him was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging him. *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 373, fn 3; 263 NW2d 376 (1977)."

Neither of the race-based standards of disparate treatment and intentional discrimination may be successfully applied in the instant case. Membership in the class affected by the closing includes workers

Defendant also alleges error in the trial judge's refusal to instruct the jury on what constitutes age discrimination and what does not. Defendant claims that certain of the instructions were vague and that the instruction should have included language from the case law. Our review of the record reveals that the trial judge instructed that "[a]ge discrimination must be a significant, determinative factor in the plant shutdown, though it need not be the sole factor". We find that the instruction faithfully reflected the standard provided in case law and was, therefore, proper as given. We are aided in this finding by the fact that defendant did not submit a proposed definition tailored to these specific facts when it made its request.

Defendant alleges that the trial judge erred in failing to instruct the jury that each individual plaintiff was required to meet his or her individual burden of proof. We find no merit in this argument for the reason that any discrimination involved arose from the same event, the plant closing. There is no necessity for individualized forms of liability where the liability of defendant to each other plaintiff, if found, would be identical to its liability to plaintiff Adama. The individual differences between plaintiffs involved the extent of damages, not the existence of liability.

of all ages; there was no comparable group of employees in the same situation as plaintiffs in that there was a significant difference in the type of manufacturing work done at Toledo II. Disparate treatment, then, would appear to be aimed at the plant itself. Predisposition to act against persons in an affected class, necessary to intentional discrimination, is also missing here. No evidence of predisposition was adduced at trial. Furthermore, all Grand Rapids workers were affected by the closing. "All Doehler-Jarvis Grand Rapids plant workers" did not constitute a protected class under the FEPA for purposes of intentional discrimination.

Defendant further alleges that the trial judge's failure to instruct the jury that an employer may lawfully go out of business was error. We do not agree. Such an instruction, if given, would have been misleading, and would itself have constituted error because it would not have been supported by the evidence. *Jaworski v Great Scott Supermarkets, Inc,* 403 Mich 689; 272 NW2d 518 (1978). Doehler-Jarvis closed a plant and moved a portion of the operation to another location. It did not go out of business.

We do not reach the damage issues raised on appeal and cross-appeal. Disposition of those issues on appeal must await a determination of liability on retrial.

Judgment in the liability phase in favor of plaintiffs is reversed and the case remanded for retrial on that issue. We do not retain jurisdiction.