Ross SUMMERS, Plaintiff,

v.

SEARS, ROEBUCK & CO., Defendant.

Civ. No. 81–73233.

United States District Court,
E.D. Michigan, S.D.

Oct. 18, 1982.

William H. Necker, Wayne, Mich., for plaintiff.

Charles C. DeWitt, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This civil action brought by an employee of defendant Sears, Roebuck and Co., and Carolyn Summers, his wife, is based upon an alleged unlawful demotion. Ross Summers asserts two causes of action arising out of his demotion. He claims that his demotion constituted a breach of his employment contract and unlawful age discrimination under the Michigan Elliott-Larsen Civil Rights Act, M.C.L.A. § 37.2101 et seq. Carolyn Summers claims loss of consortium under each of her husband's causes of action. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. This matter is before the Court on defendant's motion for summary judgment under Fed. R.Civ.Pro. 56(c) with respect to both of Mr. Summers' claims and defendant's motion to dismiss under Fed.R.Civ.Pro. 12(b)(6) with respect to Mrs. Summers' claims of loss of consortium.

From May 15, 1964 until June 5, 1981, Mr. Summers was employed as a display manager at defendant's Livonia Mall store. Mr. Summers reported to the store manager, Arthur Cone. In December of 1980, however, Mr. Cone retired and in January of 1981 John Faucher replaced Mr. Cone as the store manager. Between January and May of 1981, there were several major remodeling projects at the store for which Mr. Summers was responsible. During Mr. Cone's tenure as store manager there had never been several major projects underway at the same time.

On Friday, May 29, 1981, Mr. Summers received a memorandum from Mr. Faucher setting forth several areas of deficiency with respect to his performance and informing him that his work had been totally unsatisfactory. On Monday, June 1, 1981, Mr. Faucher called Mr. Summers to his office and expressed dissatisfaction with his work. He indicated that Mr. Summers would probably be discharged and suggested that he would be better off with a selling job. In response to these remarks, Mr. Summers requested a commissioned selling job. Mr. Faucher told Mr. Summers to go home and discuss it with his wife. On June 2, 1981, Mr. Summers told Mr. Faucher that he was reluctantly accepting a selling job. On June 5, 1981, Mr. Summers began working as a commissioned salesman.

*Motion for Summary Judgment*

Defendant moves without supporting affidavits for summary judgment under Rule 56(b) on Mr. Summers' claims that his demotion to a selling job constitutes a breach of his employment agreement and unlawful age discrimination. Defendant supported its motion with specific references to the deposition testimony of Mr. Summers. Plaintiffs have not filed any affidavits in opposition to the motion.

Before addressing the parties' arguments, the Court deems it appropriate to review the principles that must guide its decision whether to grant summary judgment. Rule 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Sixth Circuit recently reiterated the principles governing consideration of a motion for summary judgment in *Watkins v. Northwestern Ohio Tractor Pullers Ass'n.,* 630 F.2d 1155 (6th Cir.1980):

> The District Court may grant a motion for summary judgment only if it finds from the whole record before it that

there are no material facts which are in dispute. It may not make findings of disputed facts on a motion for summary judgment. The movant has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion. The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently.

*Id.* at 1158.

The party moving for summary judgment "bears the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor." *United States v. Articles of Device ...,* 527 F.2d 1008, 1011 (6th Cir.1975). *See also United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1970); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979). If the movant establishes by use of the materials specified in Rule 56(c) that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, Rule 56(e) requires that the opponent produce by affidavit or otherwise "specific facts showing that there is a genuine issue for trial." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1967), *reh. denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). *See also Daily Press, Inc. v. UPI,* 412 F.2d 126 (6th Cir.1969), *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969); *Bufalino v. Michigan Bell Telephone Co.,* 404 F.2d 1023 (6th Cir.1968); *Doff v. Brunswick Corp.,* 372 F.2d 801 (9th Cir.1967). The Supreme Court addressed the question of how much evidence the opponent must produce to avoid summary judgment in *First National Bank of Arizona v. Cities Services Co., supra:*

> It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather all that is required is that suffi-

**1160**

cient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial .... What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him.

391 U.S. at 288–89, 88 S.Ct. at 1592–93. However, Rule 56(e) does not require the opponent to show that there is a genuine issue for trial until the movant has demonstrated by use of the materials specified in Rule 56(c) that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *2361 State Corp. v. Sealy, Inc.,* 402 F.2d 370, 375 (7th Cir.1968); Wright & Miller, Federal Practice & Procedure, Civil §§ 2727, 2739 (1973).

The Court will now consider defendant's motion for summary judgment on Mr. Summers' claims of breach of employment contract and unlawful age discrimination.

*A. Breach of Employment Contract*

[4] Mr. Summers claims that his demotion constituted a breach of his employment contract because he was demoted without just cause. He relies on the principles set forth in *Toussaint v. Blue Cross,* 408 Mich. 579, 292 N.W.2d 880 (1980), to support his claim that he could not be demoted without just cause. In *Toussaint v. Blue Cross, supra,* the Michigan Supreme Court recognized a cause of action for wrongful discharge of an employee at will based upon evidence of a company policy that would support an inference that there was a contract not to discharge the employee except for just cause and only in accordance with established personnel practices and procedures. Mr. Summers asserts that these principles extend to demotions as well as discharges.[1] He further argues that certain

deposition testimony shows that it was defendant's policy that a person would not be demoted unless there was just cause.

Defendant argues that Mr. Summers' demotion did not breach his employment contract because he requested the selling job and was not involuntarily demoted. Defendant contends that the letter from Mr. Faucher to Mr. Summers and the deposition testimony of Mr. Summers show that Mr. Summers was given the option of improving his performance to the required level to keep his position as display manager. Plaintiffs argue that Mr. Summers' testimony shows that he had to take the selling job or he would be fired.

After reviewing the letter from Mr. Faucher and the pertinent parts of Mr. Summers' deposition, the Court finds that there is a question of fact as to whether Mr. Summers was involuntarily demoted. Defendant's second argument in support of its motion, however, is that the question of whether Mr. Summers was involuntarily demoted is not a question of *material* fact. It asserts that even if Mr. Summers was involuntarily demoted as he claims, he cannot establish that the demotion breached his employment contract because under the contract Mr. Summers could be demoted without just cause.

Defendant presents two arguments to support its position that Mr. Summers could be demoted without just cause. First, defendant asserts that Mr. Summers could be discharged without just cause under the contract. It argues that since it could terminate Mr. Summers without just cause, it could also demote him without just cause. It further argues that the contractual language precludes the existence of a subsequent implied contract prohibiting demotions without just cause. Plaintiffs do not dispute that defendant could terminate Mr. Summers without just cause. However, they attempt to distinguish a termination from a demotion. They argue that the contractual language is inapplicable because

1. The Court notes that in *Grubb v. Foote Memorial Hospital, Inc.,* 533 F.Supp. 671, 672 n. * (E.D.Mich.1981) (Boyle, J.), the court declined

to extend the principles of the *Toussaint* case beyond the discharge situation in the absence of further guidance from the state courts.

it fails to mention demotion and does not expressly provide that Mr. Summers could be demoted without just cause. They further argue that the contractual language does not preclude the existence of an implied contract prohibiting demotions without just cause.

Defendant's second argument in support of its position that Mr. Summers could be demoted without just cause is that there is no evidence to show that Mr. Summers could only be demoted for just cause. Although defendant concedes that Michigan law recognizes the validity of implied contracts prohibiting discharge without just cause, it contends that there is no evidence in this case which would support finding an implied contract prohibiting demotions without just cause. Plaintiffs assert that Mr. Summers' employment contract includes an implied contract consisting of defendant's representations, policies and procedures during his employment. They contend that such an implied contract prohibited defendant from demoting Mr. Summers without just cause.

The employment contract between Mr. Summers and defendant provided:

> In consideration of my employment, I agree to conform to the rules and regulations of Sears, Roebuck and Co., and my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself. I understand that no store manager or representative of Sears, Roebuck and Co., other than the president or vice president of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.

This type of contractual provision is expressly provided for by *Toussaint v. Blue Cross, supra* and precludes a legitimate expectation of a right to a just cause determination prior to termination. *See Novosel v. Sears, Roebuck and Co.,* 495 F.Supp. 344, 345–46 (E.D.Mich.1980). The Court concludes that this contractual provision also precludes a legitimate expectation of a right to a just cause determination prior to demotion. Although plaintiffs attempt to distinguish between termination and demotion, the Court finds that Mr. Summers could not have a legitimate expectation of a just cause determination prior to demotion when the contract permitted defendant to discharge him without a just cause determination. The Court also finds that the employment contract precludes the existence of a subsequent implied contract prohibiting demotions without just cause. The contract expressly precludes reliance upon subsequent representations which are contrary to the written employment contract. *See Novosel v. Sears, Roebuck and Co., supra.*

However, even if the employment contract did not preclude a subsequent implied contract requiring a just cause determination prior to demotion, the Court finds that there is no evidence in the record to show that any subsequent representations giving rise to such an implied contract were made to Mr. Summers. Defendant supported its motion for summary judgment with references to the deposition testimony of Mr. Summers. This testimony shows that no subsequent representations were made to Mr. Summers. He testified that his claim of an implied contract is based on his expectation that he would continue to be employed as the display manager if he performed his job competently. In *Schwartz v. Michigan Sugar Co.,* 106 Mich.App. 471, 477–79, 308 N.W.2d 459 (1981), the court held that a claim of an implied contract for continued employment cannot be based solely on the employee's subjective expectancy regarding his relationship with the company.

Plaintiffs attempt to support their assertion that Mr. Summers could only be demoted for good cause by referring to the depositions of Arthur Cone and Thomas Eisle. Mr. Cone, who was Mr. Summers' former supervisor, testified that he felt that he would not be terminated or demoted without just cause. He also stated that under the yearly performance evaluations and published manual which establish the proce-

dures it was implied that a person who was classified with a poor performance record would be terminated. Mr. Eisle, who replaced Mr. Summers, testified that he felt that as long as he did his job, he would keep it.

Viewing this testimony in the light most favorable to plaintiffs, the Court finds that it is insufficient to establish an implied contract under *Schwartz v. Michigan Sugar Co., supra.* Mr. Cone's and Mr. Eisle's testimony does not establish any objective circumstances of Mr. Summers' employment which would support finding an implied contract prohibiting defendant from demoting Mr. Summers without just cause. Their testimony fails to show any "common understanding or mutual intent" between defendant and Mr. Summers to contract that Mr. Summers would not be demoted but for good cause.

Plaintiffs further contend that defendant created an implied contract through its representations to Mr. Summers and its policies to the effect that Mr. Summers could only be demoted for just cause. Plaintiff refers to the yearly performance evaluations and the disciplinary procedure used by defendant. These statements in plaintiffs' brief, however, are merely assertions of fact which are not supported by specific references to any evidence in this record concerning these procedures. Without specific references to any evidence, these assertions of fact are merely conclusory allegations which cannot withstand a motion for summary judgment. *Bryant v. Commonwealth of Kentucky,* 490 F.2d 1273 (6th Cir.1974); *Bufalino v. Michigan Bell Telephone Co., supra.* As noted earlier, Mr. Summers testified at his deposition that no subsequent representations or oral agreements were made. Plaintiffs simply fail to point out any evidence of the representations, policies, or procedures they claim gave rise to an implied contract prohibiting defendant from demoting Mr. Summers without just cause.

The Court concludes that defendant is entitled to summary judgment because the employment contract precludes a legitimate expectation of a just cause determination prior to demotion and legitimate reliance upon subsequent representations which are contrary to the written contract. In the alternative, the Court concludes that defendant is entitled to summary judgment because it has shown that there is no genuine issue of fact concerning the existence of an implied contract prohibiting demotion without just cause based on the evidence in the record. Defendant's motion for summary judgment on plaintiffs' claim of breach of employment contract will be granted.

### B. Age Discrimination

Plaintiffs claim that Mr. Summers' demotion constitutes age discrimination in violation of the Michigan Elliott-Larsen Act, MCLA § 37.2101 *et seq.* Defendant moves for summary judgment on the grounds that there is no evidence in the record to support the claim of age discrimination. At his deposition, Mr. Summers testified that he thought he was demoted because of his age and his wages. He also testified that Mr. Faucher wanted to bring in a younger person who would earn less in order to reduce the payroll. Mr. Summers testified that neither Mr. Faucher nor anyone else at Sears ever said anything to him suggesting that his age was a factor in his demotion. Defendant concedes that Mr. Summers was replaced by a younger man. It argues, however, that it is entitled to judgment as a matter of law based on the evidence in the record.

Plaintiffs do not produce any evidence or point out any other evidence in the record that would support Mr. Summers' age discrimination claim. They argue that Mr. Summers' testimony that he was demoted so that a younger person could replace him is sufficient to make out a *prima facie* case of intentional age discrimination under the Michigan statute.

In *Schipani v. Ford Motor Co.,* 102 Mich. App. 606, 302 N.W.2d 307 (1981), the court discussed what constitutes a *prima facie* case of intentional age discrimination under the Michigan Elliott-Larsen Act, MCLA § 37.2101 *et seq.* The court stated:

[P]laintiff must show that he was a member of the affected class, and that the person discharging him was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging him.

*Id.* at 617, 302 N.W.2d 307. The court further stated that a plaintiff's allegation that he was replaced by a younger man is sufficient to establish a *prima facie* case of age discrimination:

[Plaintiff's] allegation that he was replaced by younger men indicates that he was discriminated against because of his age; in other words, that the person discharging him was predisposed against plaintiff because of his age and acted on that predisposition.

*Id.* at 618, 302 N.W.2d 307. However, two recent decisions of the Michigan Court of Appeals appear to have adopted a different standard.

█ In *Laugesen v. Anaconda Co.,* 510 F.2d 307 (6th Cir.1975), the Sixth Circuit held that a plaintiff must show that age was a determining factor in the employer's decision in order to recover under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Two recent Michigan Court of Appeals decisions, *Gallaway v. Chrysler Corp.,* 105 Mich.App. 1, 306 N.W.2d 368 (1981), and *Adama v. Doehler-Jarvis,* 115 Mich.App. 82, 320 N.W.2d 298 (1982), have adopted this standard as the proper burden of proof to be applied in an age discrimination suit brought under the Michigan Elliott-Larsen Act. The *Laugesen* standard requires that plaintiff show that age was a determining factor in the employer's decision in order to establish a *prima facie* case of age discrimination. *Sahadi v. Reynolds Chemical,* 636 F.2d 1116 (6th Cir.1980); *Mastie v. Great Lakes Steel Corp.,* 424 F.Supp. 1299 (E.D. Mich.1976); Vercruysse, *Summary Judgments under the Age Discrimination in Employment Act: The Rational View,* 61 Mich.Bar J. 522 (1982).

In applying the Michigan Elliott-Larsen Act in this diversity case, the Court is bound by the *Erie* doctrine to determine the issues of state law as it believes the Michigan Supreme Court would determine them. *See Woodruff v. Tomlin,* 616 F.2d 924 (6th Cir.1980), *cert. denied,* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980); *Glinsey v. Baltimore & Ohio Railroad,* 495 F.2d 565 (6th Cir.1974), *cert. denied,* 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974); Wright & Miller, Federal Practice and Procedure, Civil § 4507 (1982). The Michigan Supreme Court has not addressed the issue of what constitutes a *prima facie* case of age discrimination under the Michigan statute. The Court concludes, however, that the Michigan Supreme Court would follow the decisions of the courts of appeals in *Gallaway v. Chrysler, supra,* and *Adama v. Doehler-Jarvis, supra,* which adopted the *Laugesen* standard for age discrimination cases under the Michigan statute.

█ Applying the *Laugesen* standard in this case, the Court concludes that Mr. Summers' allegation that he was demoted so that a younger person could replace him is insufficient to establish a *prima facie* case of age discrimination under the Michigan statute. Viewing the evidence in the record in the light most favorable to the plaintiffs, the Court finds that there is no evidence to show that Mr. Summers' age was a determining factor in his demotion. *Cf. Locke v. Commercial Union Insurance Co.,* 676 F.2d 205 (6th Cir.1982); *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66 (6th Cir.1982); *Sahadi v. Reynolds Chemical, supra.* Defendant's motion for summary judgment on plaintiffs' claim of age discrimination will be granted.

*Motion to Dismiss*

Carolyn Summers has alleged claims for loss of consortium arising out of her husband's claims for breach of his employment contract and age discrimination. Defendant moves to dismiss these claims under Fed.R.Civ.Pro. 12(b)(6).

█ It is well-settled under Michigan law that a spouse's claim for loss of consortium is wholly derivative of the claim by the injured party. *Dewey v. Perkins,* 295

Mich. 611, 295 N.W. 333 (1940); *Jones v. Slaughter,* 54 Mich.App. 120, 220 N.W.2d 63 (1974). Since the Court has concluded that defendant is entitled to summary judgment on both of Mr. Summers' claims, the Court finds that Mrs. Summers' claims for loss of consortium fail to state claims upon which relief can be granted and will grant defendant's motion to dismiss her claims.

Therefore, defendant's motion for summary judgment and motion to dismiss will be granted. An appropriate order shall be submitted.