139 Mich. App. 731 (1984)
362 N.W.2d 780
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA
v.
C. M. SMILLIE COMPANY
Docket No. 67895.
Michigan Court of Appeals.
Decided November 13, 1984.
Jordan Rossen, General Counsel, and William Wertheimer, Assistant General Counsel, for plaintiffs.
*733 The Fishman Group (by Steven J. Fishman and Donald H. Scharg), for defendants.
Before: WAHLS, P.J., and R.M. MAHER and C.W. SIMON,[*] JJ.
PER CURIAM.
Plaintiffs brought suit to enjoin defendant, C.M. Smillie Company, from advertising for employees in violation of § 3a of the strikebreakers act, MCL 423.253a; MSA 17.456(3a).[1] Summary judgment was granted in favor of defendant, the trial court ruling that the above statutory provision was preempted by the National Labor Relations Act, 29 USC 151 et seq. Plaintiffs appeal as of right. We affirm.
Plaintiffs were, in 1982, the certified bargaining representatives for defendant's production and maintenance employees. In mid-July, 1982, these employees commenced a lawful economic strike pursuant to a strike vote. On September 24, 1982, defendant placed advertisements in the Detroit News for positions available "to replace people who have left their jobs". Plaintiffs then commenced an action for injunctive relief. Plaintiffs asserted that the violation of the strikebreakers act encouraged a breach of the peace and constituted an illegal interference with the right to strike, which could "cause the replacement of lawfully striking employees, a weakening of the union's ability to negotiate a proper strike settlement and a prolongation of the strike".
The starting point of our analysis is the Supremacy *734 Clause of US Const, Art VI. Pursuant thereto, federal preemption occurs when compliance with both federal and state regulations is not possible, when the nature of the subject matter requires federal supremacy and uniformity or when Congress intended to displace the state legislation. Adama v Doehler-Jarvis, Division of N L Industries, Inc, 115 Mich App 82, 86; 320 NW2d 298 (1982), rev'd on other grounds 419 Mich 905 (1984). The National Labor Relations Act is a comprehensive regulation of industrial relations by Congress and takes much from the states, but it also leaves much to the states. Garner v Teamsters Union Local 776, 346 US 485, 488; 74 S Ct 161; 98 L Ed 228 (1953). Thus, preemption may not automatically be assumed in a case such as this, where the NLRA does not specifically address the matter of advertising for strike replacements.
In labor-relations cases, the United States Supreme Court has developed two doctrines for determining whether state regulations or causes of action are preempted by the NLRA. The first is the "arguably protected/arguably prohibited" test set out in San Diego Building Trades Council v Garmon, 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959). The second is the test developed in Local 20, Teamsters Union v Morton, 377 US 252; 84 S Ct 1253; 12 L Ed 2d 280 (1964), and Lodge 76, International Ass'n of Machinists v Wisconsin Employment Relations Comm, 427 US 132; 96 S Ct 2548; 49 L Ed 2d 396 (1976). The court below based its decision on this second doctrine. We agree because advertising for strike replacements is not conduct prohibited by § 8 of the NLRA, nor is freedom from such advertising protected by § 7.[2]
*735 Under the Morton/Machinists doctrine, where conduct is neither protected nor prohibited by the NLRA, the Court looks to whether Congress intended the conduct to be unregulated and to remain a part of the self-help remedies left to the combatants in a labor dispute. Belknap, Inc v Hale, ___ US ___; 103 S Ct 3172; 77 L Ed 2d 798 (1983). In determining Congress's intent, the crucial inquiry is whether the exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective implementation of the NLRA's processes. Machinists, supra, pp 147-148. Consideration may also be given to the two factors in Garmon, supra, pp 243-244: whether the regulated activity is merely a peripheral concern of the NLRA and whether it touches interests deeply rooted in local feeling and responsibility.
We believe that advertising for strike replacements cannot realistically be separated from the employer's right to hire replacements, which indisputably is "part and parcel of the process of collective bargaining" that Congress intended to be governed by the free play of economic forces. Machinists, supra, p 149. As acknowledged in plaintiffs' complaint, regulation of advertising directly affects the employer's success in hiring replacements.
We can perceive no state interest that would overcome the presumption of preemption.[3] The *736 strikebreakers act cannot be construed as a general truth-in-advertising act which is designed to protect people from misleading advertisement schemes. Preemption would not deny misled employees any of the generally applicable remedies for fraud or misrepresentation. Further, we believe that the notice provision is not for the purpose of preventing violence, else it would logically be applied to all strikes, not "lawful" strikes alone.[4]
Plaintiffs note that compliance with the strikebreakers act puts a prospective employee on notice that he can refuse the job without losing his claim to unemployment compensation.[5] Plaintiffs thus contend that Congress clearly intended state regulation in this area. We disagree. There is no evident historical relationship between the strikebreakers act and the federal unemployment tax law. Nor do we perceive any compelling congressional interest in the timing of notice to a prospective employee. Thus, we distinguish New York Telephone Co v New York State Dep't of Labor, 440 US 519; 99 S *737 Ct 1328; 59 L Ed 2d 553 (1979), where the Court found a great deal of evidence that Congress intended to authorize the New York compensation law permitting benefits to be paid to striking employees.
We conclude that MCL 423.253a; MSA 17.456(3a) is unconstitutional as it applies to employers within the meaning of the NLRA. It is undisputed that defendant is such an employer. Therefore, the lower court properly granted summary judgment in favor of defendant.[6]
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] "No person, partnership, agency, firm or corporation, or officer or agent thereof, shall recruit, solicit or advertise for employees, or refer persons to employment, in place of employees involved in a lawful strike or lockout, without adequate notice to the person, and in the advertisement, that there is a strike or lockout at the place at which employment is offered and that the employment offered is in place of employees involved in the strike or lockout."
[2] The employees' right to strike is preserved by § 13. However, the employer has the right to hire replacements. NLRB v MacKay Radio & Telegraph Co, 304 US 333; 58 S Ct 905; 82 L Ed 1381 (1938). The replacements may be permanent if the work stoppage is an economic strike. Belknap, Inc v Hale, ___ US ___; 103 S Ct 3172; 77 L Ed 2d 798 (1983).
[3] The strikebreakers act apparently originated from a model statute drafted by the International Typographical Union in 1960, designed to prevent regularized interstate traffic in strikebreakers. See Comment, Anti-Strikebreaking Legislation  The Effect and Validity of State-Imposed Criminal Sanctions, 115 U Pa L Rev 190 (1966); Note, 77 Harv L Rev 377 (1963). The New Jersey Supreme Court, in a decision considering that state's strikebreakers act as a whole, found it preempted by the NLRA. United States Chamber of Commerce v State, 89 NJ 131; 445 A2d 353 (1982). The Illinois Supreme Court, faced with the notice provision only of that state's statute, also found preemption. People v Federal Tool & Plastics, 62 Ill 2d 549; 344 NE2d 1 (1975).
[4] We do not consider whether, assuming the notice provision is to prevent violence, it is preempted by the Byrnes Act, 18 USC 1231, which prohibits transportation in interstate commerce of strikebreakers for the purpose of obstruction or interfering by force or threats with peaceful union activity.
[5] Section 903(a) of the Social Security Act (now part of the Federal Unemployment Tax Act), 26 USC 3304, provides in part:

"(a) Requirements.  The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that 
* * *
"(5) compensation shall not be denied in such State to any otherwise eligible individual for refusing to accept new work under any of the following conditions:
"(A) if the position offered is vacant due directly to a strike, lockout, or other labor dispute."
[6] Intervening defendant has argued that the entire strikebreakers act is preempted by the NLRA. We do not address that issue since it is beyond the scope of plaintiff's appeal.