822 F.2d 59
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Melvin & Peggy CHASE, Plaintiffs-Appellants,
v.
MICHIGAN LIFE INSURANCE COMPANY, and National Casualty
Company, Defendants-Appellees.
 No. 86-1592
 United States Court of Appeals, Sixth Circuit.
 July 6, 1987.
 
 Before KEITH and NORRIS, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Appellant Melvin Chase filed an action in district court alleging four causes of action: a breach of employment contract claim under Michigan law; a negligence evaluation claim under Michigan law; an age discrimination claim under the Age Discrimination in Employment Act ('ADEA') and the Michigan Elliott-Larson Civil Rights Act; and a claim under Michigan law for intentional infliction of emotional distress. On April 1, 1986, appellees Michigan Life Insurance Company and National Casualty Company filed a motion for summary judgment. The district court heard the motion on May 22, 1986. At the hearing, appellant voluntarily dismissed his intentional infliction of emotional distress claim. Summary judgment was granted to appellees on the remaining claims. Appellant appeals the grant of summary judgment as to the contract, negligence and age discrimination issues. For the reasons set forth below, we AFFIRM the judgment of the Honorable Horace Gilmore.
 
 
 2
 Appellant began work for Michigan Life Insurance Co. ('Michigan Life') as a claims investigator in 1966. In 1973, appellant was promoted to Regional Group Sales Manager in Michigan Life's Florida office. When the Florida office closed four years later, appellant was transferred to the same position in Detroit. Appellant was later transferred to Grand Rapids where he held the same job. Business deteriorated in Grand Rapids and in 1982 the Grand Rapids office was closed and appellant was released from employment.
 
 
 3
 Appellant initially argues that under Touissant v. Blue Cross and Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980), a contract existed between appellant and Michigan Life stating that appellant would be transferred, trained or placed in another position before being discharged. Appellant argues that several statements in Michigan Life's Manager's Manual[1] and in an inter-office memorandum from Michigan Life's President, S.E. Turner,[2] gave rise to this contract. He argues that these documents created an agreement providing that appellant would not be discharged by Michigan Life except for good cause, and only after the possibility of transfer or additional training had been exhausted. In addition, appellant argues that a legitimate expectation of adherence to this policy was created when Michigan Life transferred him from Florida to Michigan.
 
 
 4
 In Toussaint the court recognized that employment is at the will of either party, but that the employment-at-will doctrine does not apply when there is a contract of employment which provides that an employee may not be discharged except for cause. Toussaint was recently explained further in Valentine v. General American Credit, 420 Mich. 256, 362 N.W.2d 628 (1984), where the court stated:
 
 
 5
 'Toussaint' makes employment contracts which provide that an employee will not be dismissed except for cause enforceable in the same manner as other contracts. It did not recognize employment as a fundamental right or create a new special right. The only right held in Toussaint to be enforceable was the right that arose out of the promise not to terminate except for cause. Employers and employees remain free to provide, or not to provide, for job security. Absent a contractual provision for job security, either the employer or the employee may ordinarily terminate an employment contract at any time for any, or no, reason.'
 
 
 6
 Valentine, 420 Mich. at 258.
 
 
 7
 In reviewing the facts of this case, we find that the district court did not err in granting summary judgment on this issue. There existed no evidence of an agreement or contract between appellant and Michigan Life. The statement in the Manager's Manual states that training and transfer possibilities will be explored only in the majority of the cases. There was no representation that the possibility of transfer or additional training would be exhausted in every case. Neither was there any assurance that such possibilities would be considered in this case. Also, the memorandum from President Turner did not apply to sales personnel. The memorandum applied to a specific job analysis program undertaken in 1982 to hold salary costs down in certain non-income producing areas while trying to increase premium income. The positions that would possibly be eliminated only affected non-sales employees. Thus, the memorandum was not applicable to appellant's position at Michigan Life.
 
 
 8
 Chase finally argues that the fact that he was transferred to Detroit from the Florida office when that office closed in 1977 created a legitimate expectation that he would again be transferred when the Grand Rapids office was closed. This argument is similarly specious. As the district court correctly found, appellant's own deposition testimony established that when he was transferred to Detroit, no one told him that he would be transferred if Michigan Life closed any future offices. His deposition indicated that his conversation with Supervisor Townley concerning job security only related to the closing of the Florida office in 1977.
 
 
 9
 Appellant next argues that Michigan Life negligently breached its duty to properly evaluate his job performance. Appellant's negligence claim stems from his employment contract with Michigan Life. Appellant contends that Michigan Life failed to set reasonable performance standards which misled him into believing that such standards had been met and that he was complying with them. He argues that he was ultimately discharged on the basis of his evaluations. We find no merit in this claim.
 
 
 10
 This court has held that in Michigan an action in tort requires a breach of duty separate and distinct from a breach of contract. Haas v. Montgomery Ward & Company, No. 85-1696 (6th Cir. March 5, 1987) (citing Hart v. Ludwing, 347 Mich. 559, 79 N.W.2d 895 (1956)). Haas was an action brought against an employer by a former employee who claimed that she was wrongfully discharged, and that the employer was negligent in discharging her. The court, relying on Haas, held that plaintiff had no valid claim in tort. The court noted that plaintiff's position with the company was the only reason she was evaluated. Without the employment contract, the evaluation would never have occurred. Thus, 'because there was no breach of duty distinct from the breach of contract', Brewster v. Martin Marietta Aluminum Sales, Inc., 145 Mich. App. 641, 668, 378 N.W.2d 558, 569 (1985), no independent action in tort existed.
 
 
 11
 In the present case, without the employment contract, the evaluation would never have occurred. Thus, appellant has no valid action in tort.
 
 
 12
 Appellant's final claim is that Michigan Life's decision to dismiss him was motivated by a pre-disposition to discriminate against him because of his age. A plaintiff must show that age was a determining factor in the employer's decision in order to recover under the ADEA. Langesen v. Anaconda Co., 510 F.2d 307 (6th Cir. 1985). The same standard has been adopted in Michigan under the Elliott-Larsen Act. Gallaway v. Chrysler Corp., 105 Mich. App. 1, 306 N.W.2d 368 (1981); Adama v. Doehler-Jarvis, 115 Mich. App. 82, 320 N.W.2d 298 (1982), rev'd on other grounds, 419 Mich. 905 (1984); Matras v. Amoco Oil Co., 424 Mich. 675, 682, 385 N.W.2d 586, 589 (1986). In addition, to recover under Elliott-Larsen, a plaintiff must show that 'the person discharging him was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging him.' Summers v. Sears, Roebuck & Co., 549 F. Supp. 1157, 1163 (E.D. Mich. 1982); Schipani v. Ford Motor Co., 102 Mich. App. 606, 617, 302 N.W.2d 307, 312 (1981).
 
 
 13
 In the present case, as the court below correctly concluded, there is no evidence that age played a role in appellant's dismissal. Appellant argues that three positions as Group Sales Manager were filled by younger employees immediately prior to or just after he was discharged. However, appellant was unqualified for the position which opened in Cleveland, since the intent was to take over an existing insurance company and to utlize the sales personnel already in that office to maintain that business. The other positions were filled several months before Michigan Life first considered closing the Grand Rapids office. Summary judgment must be granted in favor of an employer where it is clear the employee cannot establish a prima facie case of discrimination. Ackerman v. Diamond Shamrock Corporation, 670 F.2d 66 (6th Cir. 1982); LaGrant v. Gulf & Western, 748 F.2d 1087 (6th Cir. 1984). In this case, summary judgment was proper.
 
 
 14
 Accordingly, for the reasons set forth above, we AFFIRM the decision of Judge Horace Gilmore.
 
 
 
 [1]
 The Manager's Manual states:
 Discharge of an employee is always considered to be an action of last resort taken only after remedial measures have been proven to be ineffective or when the employee's conduct is such as to preclude further employment. In the majority of cases, discharge is not considered until the possibility of transfer or additional training has been exhausted.
 
 
 [2]
 The inter-office memorandum from President S.E. Turner states:
 The purpose of the [performance evaluation] program will be to determine areas of needed improvement and to establish reasonable performance standards. Whenever this type of activity is undertaken, job security becomes a sensitive issue. The company realizes that an individual's job is extremely important; therefore, if it is determined that some jobs are not required because there is insufficient work to warrant the position, or if the job can be done better by continuing job tasks, then the Company will make special efforts to redirect the career paths of the affected employees. Solutions of individual problems may require an individual to take a temporary assignment until a permanent solution is reached.