Samuel A. Spiegel, J.
Defendánts move for dismissal of the amended complaint upon the grounds that the court has no jurisdiction of the subject matter and that the National Labor Relations Board has sole and exclusive jurisdiction.
The application rests upon the pleadings and a single affidavit not on the merits, in support of the motion. It is argumentative as to the legal conclusions to be drawn from the allegations of the complaint. It concerns itself with the question whether the NLRB has sole and exclusive power to determine the issues raised by the plaintiffs with respect to the unfair labor practices set out in the complaint, or whether the court has power or authority to grant any of the relief requested.
The allegations of the complaint must be deemed to be true. Nevertheless, the basic allegations of fact as to the existence of certain contracts having no-strike and arbitration clauses are denied, as well as the allegations of violence and threat of violence.
It is alleged in the amended complaint that AFTRA (the American Federation of Television & Radio Artists) and ABO (American Broadcasting Companies, Inc. and ABC Sports, Inc.) and other operators of radio and television networks had entered into substantially identical codes for a term ending November 15, 1966. Prior to such expiration, negotiations were undertaken, and during the course thereof it was demanded that any new free-lance code shall contain a provision that AFTRA performers would not be required to cross a lawful picket line of another union. The negotiating parties failed to arrive at any agreement in that connection. In April, 1967 the networks, including ABC, and AFTRA, as alleged, reached an oral agreement which was to be reduced to writing after termination of a then existing strike. By such oral agreement, the parties were to continue to be bound by various provisions of the expired codes, including the no-strike clause and arbitration provision, and the provisions with respect to individual employment contracts. All of these were to continue in effect without change. In December, 1967 and January, 1968, the networks, including ABC, and AFTRA did execute free-lance codes which reduced to writing the alleged oral agreement with respect to free-lance performers who entered into individual contracts. Those codes contained no-strike and arbitration clauses and similar provisions with respect to individual employment agreements. AFTRA and its members were not accorded *200 the right to refuse to perform services because of a picket line established by any other union.
The National Association of Broadcast Employees and Technicians (hereafter referred to as NABET), whose members operate electronic equipment, was in dispute with ABC. Consequently, NABET enaged in a strike against ABC during the period of September 22,1967 to November 25,1967. NABET maintained a picket line in front of ABC. It is further alleged that on September 23, 1967, AFTRA ordered its members, performing services for ABC, including contract employees, not to cross the NABET picket lines, and threatened to take disciplinary action against any noncomplying member. Moreover, they were threatened with physical harm. As a result thereof, it is alleged, a number of contract employees refused to cross the picket lines to perform services for ABC. ABC contends that they thereby breached their employment contracts, causing ABC to suffer damage. After issuance of those orders and threats, AFTRA commenced disciplinary proceedings against noncomplying contract employees who had continued to perform services in pursuance of their separate employment contracts with ABC, and, as a result of such proceedings, contract employees were fined and censured, and others were threatened with fine and censure. At all pertinent times, AFTRA had knowledge of the existence of such employment contracts. Nevertheless it issued such orders, over ABC’s protests, for the purpose of causing contract employees to breach their agreements and the no-strike and arbitration clauses made a part thereof. Such conduct, plaintiffs allege, constituted an intentional and malicious interference with ABC’s employment contracts and an inducement to repudiate them. Finally, it is alleged, that the continuance of such course of conduct and the subsequent disciplinary action including the enforcement of fines, unless enjoined, will cause irreparable damage to ABC.
It appears that, prior to commencement of the action, ABC filed with the NLRB Regional Director, Second Region, charges of unfair labor practice with respect to AFTRA’s order to its members directing them not to cross the picket lines of NABET (National Labor Relations Act, § 8, subd. [b], par. [1], sub-par. [A]; U. S. Code, tit. 29, § 158, subd. [b], par. [1], sub-par. [A]). On November 27,1967, the Acting Regional Director refused to issue a complaint upon the basis of that charge. No appeal was prosecuted. The charge did not refer to violation of performers ’ contracts.
*201 The basic issue to be determined herein is whether the complaint tenders an overriding State interest that is enforcible by State action. (Linn v. Plant Guard Workers, 383 U. S. 53 [libel action]; United Workers v. Laburnum Corp., 347 U. S. 656; Automobile Workers v. Russell, 356 U. S. 634 [violence and threats of violence]; Machinists v. Gonsales, 356 U. S. 617 [wrongful expulsion from union membership]; Allen-Bradley Local v. Board, 315 U. S. 740 [mass picketing].) Interference, with knowledge, with contract and inducing breach thereof, is a tort. (Posner & Co. v. Jackson, 223 N. Y. 325, 332.) Economic force by strike, in violation of arbitration and no-strike provisions, is not a protected activity. (Matter of W. L. Mead, Inc., 113 NLRB 1040 [1955].) Thus, in Labor Bd. v. Rockaway News Co. (345 U. S. 71, 80-81) which involved section 8 (subd. [b], par. [4], subpar. [D]) of the act, the court held the act
‘ ‘ Clearly enables contracting parties to embody in their contract a provision against requiring an employee to cross a picket line if they so agree. And nothing in the Act prevents their agreeing upon contrary provisions if they consider them appropriate to the particular kind of business involved. An employee’s breach of such an agreement may be made grounds for his discharge without violating § 7 of the Act [U. S. Code, tit. 29, § 157.]. Labor Board v. Sands Go., 306 U. S. 332, 334. * * *
“We hold that the no-strike and arbitration provisions of the contract are not prohibited, nor were they rendered illegal by appearing in the same contract with forbidden provisions in view of the circumstances we have recited. Under the circumstances of this case, it was not an unfair labor practice to discharge Waugh”. (See Atkinson v. Sinclair Refining Co., 370 U. S. 238.)
If an unfair labor practice were involved, the filing of an unfair-labor-practice charge does not necessarily bar State action. Thus, in Perry & Sons v. Robilotto (23 A D 2d 949), the court stated: ‘ ‘ Absent any authoritative holding to the contrary, we are constrained to follow the decisions of the New York courts which hold that a strike in contravention of a collective bargaining agreement is not a ‘ labor dispute ’ within the meaning of section 876-a of the former Civil Practice Act; that jurisdiction in such cases has not been pre-empted by Federal authority; and that such a strike may be enjoined.” Tortious interference with business by inducement of breach of no-strike and arbitration agreements and by threat of intimi *202 dation will afford basis for common-law action. Thus, in United Workers v. Laburnum Corp. (supra, p. 665) the court stated: “To the extent * * * that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated. The care we took in the Garner case to demonstrate the existing conflict between state and federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the state procedure would have survived.” And in Linn v. Plant Guard Workers (supra, p. 62) the court there stated: “In United Automobile Workers v. Bussell, 356 U. S. 634 (1958), we again upheld state jurisdiction to entertain a compensatory and punitive damage action by an employee for malicious interference with his lawful occupation. In each of these cases the ' type of conduct ’ involved, i.e., ‘ intimidation and threats of violence, ’ affected such compelling state interests as to permit the exercise of state jurisdiction. [San Diego Unions v.] Garmon, [236,] 248].”
Even if, as defendants argue, the order directing union members not to cross the NABET picket line is a protected activity, yet that is not precisely plaintiffs’ complaint. In addition to any such arguable violation of a protected activity, if it be one, plaintiffs complain that such order was made with knowledge of existing contracts, for the purpose to induce the breach thereof, and with specific knowledge that such contracts contain no-strike and arbitration clauses. Moreover, the order was, as alleged, accompanied by threats of physical violence. While the union is free to discharge its noncomplying members, it is not thereby insulated against action by the plaintiffs in an area of overriding State interest. The right of refusal to cross a picket line (Labor Bd. v. Rockaway News Co., 345 U. S. 71, supra) is hot posited on the presence of unlawful activity on the part of the union.
For the malicious inducement of breach of contract containing no-strike and arbitration provisions accompanied by threat of violence, plaintiffs may maintain this action for relief at common law in this court. Defendants urge that plaintiffs are drawing conclusions of facts which are unsupported. Only by trial can the truth be determined.
The motion to dismiss the amended complaint is denied.