OPINION OF THE COURT
Diane A. Lebedeff, J.
Plaintiffs move for a temporary injunction under a local law which regulates hiring of "strikebreakers” as defined under that local law. Defendants (Greyhound) cross-move for dismissal of the amended complaint pursuant to CPLR 3211 (a) (7).
Greyhound Lines, one of the largest bus lines in the Nation, *602 operates in New York City and in thousands of localities from coast to coast. The Amalgamated Transit Union, Local 1202, represents Greyhound bus drivers in New York City. A strike of drivers began on March 2, 1990, after a collective bargaining agreement expired. Both the local and national press have reported serious acts of violence against strikers and replacement drivers, as well as unusual accidents caused by replacement drivers whom plaintiffs claim are inadequately trained.
The complaint seeks civil enforcement of a penal statute and asks that the court enjoin Greyhound’s claimed violation of a New York City ordinance, specifically Administrative Code of the City of New York § 22-502 (formerly § 900-2.0). That enactment hinges upon the term "strikebreaker”, which is defined in Administrative Code § 22-501 (a) (6) as follows: " 'Strikebreaker’. Any person who customarily and repeatedly offers himself or herself for employment for the duration of a strike or lockout in the place of employees involved in a strike or lockout.” Administrative Code § 22-502 provides:
"§ 22-502 Unlawful conduct, a. It shall be unlawful in the city of New York for any employer wilfully and knowingly to employ any strikebreaker to replace employees who are either on strike against or locked out by such employer.
"b. It shall be unlawful within the city of New York for any person, firm or corporation not directly involved in a strike or lockout to recruit any person or persons for employment or to secure or offer to secure for a person or persons any employment when the purpose of such recruiting, securing or offering to secure employment is to have such person take the place in employment of employees in an industry or establishment where a strike or lockout exists, provided that this section shall not apply to any employment agency duly licensed in the city of New York or any nurses registry and provided that such employment is in the regular course of business of such employment agency or nurses registry.
"c. It shall be unlawful for any person, firm or corporation including such duly licensed employment agency to transport or arrange to transport to the city of New York any person or persons for employment for the purpose of having such person take the place in employment of employees in an industry or establishment where a strike or lockout exists.
"d. Any person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be subject to a fine or [sic] not more than one thousand dollars *603 or to suffer imprisonment for a term not exceeding one year, or both.”
The amended complaint sets forth two causes of action under subdivisions (a) and (c).
Greyhound has maintained, both in this suit and to the public-at-large, that it was not hiring strikebreakers but permanent replacement workers. That position is relevant to the application of this local law, as has been recognized in the criminal context (see, People v Eastern Airlines, 38 Misc 2d 1042; Matter of Bahr v New York Tel. Co., 69 Misc 2d 138).
As a primary basis for the cross motion to dismiss, Greyhound urges that the ordinance directly covers a labor-management question which is under the ambit of the National Labor Relations Act (NLRA) (29 USC § 151 et seq.), that the NLRA preempts the field, and that this local attempt to regulate the hiring of workers to replace striking employees violates the Supremacy Clause of the US Constitution. Greyhound also maintains that the provision does not create a private right of action and is unconstitutionally vague.

Preemption in the Labor Area

To weigh the argument that the subject of the local legislation is preempted, this court must consider the rationale for preemption arguments, analyze the scope of the Federal legislation, and compare the Federal and local regulation. While there is no preemption where the local regulation does not interfere with a Federal regulatory scheme (Farmer v Carpenters, 430 US 290), preemption must be considered where there is concern that one forum enjoins as illegal a type of conduct lawful in the Federal forum or that a State court would restrict rights guaranteed under Federal law (Automobile Workers v Russell, 356 US 634).
In the labor area, Congress has not given specific directions on the scope of preemption. For that reason, there is no blanket preemption of every local regulation which touches the complex relationship between employers, employees and unions (Farmer v Carpenters, supra). Courts have the guidance of two National Labor Relations Act provisions, specifically section 7 (29 USC § 157), which guarantees the rights of collective bargaining and of concerted activity for that purpose, and section 8 (29 USC § 158), which defines unfair labor practices. If the subject of the local legislation clearly falls under either section 7 or 8, the local law is preempted (see, *604 Garner v Teamsters Union, 346 US 485; see also, Chamber of Commerce v State, 89 NJ 131, 445 A2d 353). If the area covered by the local ordinance is arguably under either section, preemption applies (San Diego Unions v Garmon, 359 US 236).
Additionally, there are areas which Congress has chosen to leave free of regulation upon which localities may not impose requirements. Congress intended certain self-help remedies to be available to combatants in labor disputes or to be subject to the free play of economic forces. For example, in Machinists v Wisconsin Employment Relations Commn. (427 US 132), it was held that a State could not prohibit union workers from refusing to work overtime as an unfair labor practice because the concerted refusal was a peaceful economic weapon permitted under Federal law. That holding was an extension of Teamsters Union v Morton (377 US 252), which invalidated a local effort to limit secondary activity of unions lawful under Federal rules.
Local regulations which survive preemption claims follow two common patterns. The first involves issues tangential to a labor dispute, such as the availability of classic State law causes of action to a plaintiff (see, for example, 15 McKay Place Realty Corp. v AFL-CIO, 32B-32J, Serv. Employees Intl. Union, 576 F Supp 1423 [ED NY] [claim for lost wages]; American Broadcasting Cos. v Brandt, 56 Misc 2d 198 [claim for tortious interference with contract and intentional infliction of mental distress]).
The second pattern involves labor activity but the local regulation impacts on a concern peripheral to the Federal law and touches interests deeply rooted in local feeling and responsibility (Belknap, Inc. v Hale, 463 US 491). These instances often consider violence, threats of violence or picketing (see, Garner Co. v Teamsters Union, 346 US 485, supra; Barclay’s Ice Cream Co. v Local No. 757 of Ice Cream Drivers & Employees Union, 41 NY2d 269 [picketing for no recognized employment reason]).

Preemption Applied to Administrative Code § 22-502

Turning to the strikebreaker provision, it must be recognized that the hiring of workers to replace strikers is lawful under Federal law (Labor Bd. v Mackay Co., 304 US 333; TWA v Flight Attendants, 489 US 426). Viewing the complaint in the context of the framework of Federal preemption in the *605 labor area as developed above, it is inescapably clear that plaintiffs have few arguments available against preemption.
The first cause of action pleaded against Greyhound is under subdivision (a) of Administrative Code § 22-502, which essentially prohibits the employment of strikebreakers by an employer. This provision cuts close to the bone of the right to hire replacement workers. Indeed, the three courts which have considered similar strikebreaker employment prohibitions have found Federal preemption in short order (Alton Box Co. v City of Alton, 65 Lab Cas [CCH] ¶ 52,575, 77 LRRM [BNA] 2123 [DC, SD 111]; State of Illinois v Midland Co., 110 LRRM [BNA] 3320 [DC, CD Ill]; and City of Columbus v Guay, 132 LRRM [BNA] 3046 [Franklin County Ct App, Ohio]).
Arguably, the local interest exception to the Federal preemption principles might be urged. However, the legislative history indicates no concern by the enacting body with either actual or potential labor violence.* There is simply no basis to hold that the impact of the antistrikebreaker law provision directed against the employer is tangential to a labor dispute or that preemption may be otherwise avoided.
After a careful weighing of this first cause of action, without reaching the other points raised by defendants and assuming that Administrative Code § 22-502 (a) may properly be applied to Greyhound, the court concludes that the proposed application of the provision is barred by principles of Federal preemption. Accordingly, the first cause of action must fall.
The second cause of action is under subdivision (c) of that section, which, as it is sought to be applied, would prohibit Greyhound from transporting or arranging for the transportation of strikebreakers to be replacement workers. In words which are highly applicable here, the New Jersey Supreme Court characterized a similar provision as follows: "Since employers have the right under the federal law to hire replacement employees * * * these statutory provisions contra *606 vene the labor-management economic balance established by the federal Act * * * The methods an employer sees fit to use in obtaining replacements are part and parcel of his federal right. The primary effect could be to make replacement virtually impossible for some employers * * * [who must seek such workers from different geographical areas]. Thus the employer’s utilization of others to * * * transport prospective employees to the place of business cannot be inhibited by * * * [local] law.” (Chamber of Commerce v State, 89 NJ 131, 149-150, 445 A2d 353, 362-363, supra.) Again, no acceptable local interest is present to be urged and without reaching other arguments and assuming this subdivision may be properly applied, such an application is found barred by principles of Federal preemption. This second cause of action must also fall.
The plaintiffs rely upon Bardane Mfg. Co. v Jarbola (724 F Supp 336 [MD Pa]), as authority upholding antistrikebreakers statutes, for the court found no Federal preemption of a Pennsylvania law requiring certain advertisements disclose the jobs involved replacement of striking or locked-out workers (cf., Auto Workers v Smillie Co., 118 LRRM [BNA] 2883 [Mich], and People v Federal Tool & Plastics, 62 111 2d 549, 344 NE2d 1). While plaintiffs urge that Bardane Mfg. Co. v Jar-bola (supra) states the better rule, a disclosure rule is simply not involved here, but rather the court is presented with two provisions which directly interfere with implementation of an explicitly recognized and factually applicable right of an interstate employer to hire replacement workers under Federal labor law principles.
Based on the foregoing, the court is compelled to dismiss the complaint.

Temporary Restraining Order

Upon the presentation of the original order to show cause, a temporary restraining order was issued which prohibited Greyhound, among other actions, from hiring any replacement drivers (Wright, J.). On the next day, Justice Milonas of the Appellate Division, First Department, declined to stay the temporary restraint, citing the "volatile situation”. Shortly thereafter, a temporary restraining order continued upon the consent of counsel and, later, by court order. Counsel, with court conferences, agreed on expedited confidential discovery on whether the replacement drivers were "strikebreakers” and whether the proceeding had factual support.
*607 On May 11, 1990, the Appellate Division, First Department, stayed that temporary restraining order, with the majority holding that a full evidentiary hearing should have been conducted pursuant to Labor Law § 807 (157 AD2d 167).
By reason of the determination that dismissal of the proceeding is required, a further evidentiary hearing is not necessary.
Based upon the foregoing, the cross motion is granted, the complaint is dismissed, and the motion for a preliminary injunction is denied as moot.

 This antistrikebreaker act was intended to protect industry, business and workers "from the unsavory and disreputable individuals usually associated with professional strike-breaking” upon the basis that "a large percentage of professional strike-breakers have criminal records of one sort or another and are without exception floaters” (1 Report of Comm on Labor & Indus, Proceedings of Council of City of NY, at 2673 [May 8, 1962]). It was also there reported that similar provisions had been adopted in Washington, Michigan, Maryland, Delaware, Massachusetts, Pennsylvania and New Jersey. After further committee hearings, the bill was twice revised in May and June before reaching final form (id., at 2694-2695, 3138-3140).