724 F.Supp. 336 (1989)
BARDANE MANUFACTURING CO., and Chamber of Commerce of the United States, Plaintiffs,
v.
Andrew J. JARBOLA, District Attorney for Lackawanna County, in his Official Capacity, Pennsylvania AFL-CIO, and Ernest D. Preate, Jr., Attorney General for the Commonwealth of Pennsylvania, Defendants.
Civ. No. 87-1822.
United States District Court, M.D. Pennsylvania.
August 30, 1989.
*337 Robert Ufberg, Scranton, Pa., and Leonard L. Scheinholtz and Robert F. Prorock, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Bardane.
Stephen A. Bokat and Robin S. Conrad, National Chamber of Commerce, Litigation Center, Inc., Washington, D.C., for Chamber of Commerce.
Nancy B.G. Lassen, Kirschner, Walters & Willig, Philadelphia, Pa., for AFL-CIO.
Susan J. Forney, Office of the Atty. Gen., Harrisburg, Pa., for Com.
John E. Kolick, Jr., Dickstein, Shapiro & Morin, Washington, D.C., for Preate and Jarbola.

MEMORANDUM
CONABOY, Chief Judge.

I
This is a civil action for declaratory and injunctive relief by which the Plaintiffs seek to invalidate Section 5 and the related provisions set forth in Section 6 of the Pennsylvania Strikebreakers Act, 43 Pa. Stat.Ann. § 217.25-217.26. The pertinent provisions involved are as follows:
Section 5. It shall be unlawful for any person, partnership, agency, firm or corporation, or officer or agent thereof, knowingly to recruit, solicit or advertise for employees or refer persons to employment in place of employees involved in a labor dispute without adequate notice to such person or in such advertisement that there is a labor dispute at the place at which employment is offered and that the employment offered is in place of employees involved in such labor dispute. (43 Pa.Stat.Ann. § 217.25)
Section 6. Any person, partnership, agency, firm or corporation violating § 5 of this Act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than five hundred ($500.00) dollars, or imprisonment for a term not exceeding one year, at the discretion of the court. (43 Pa.Stat.Ann. § 217.26)
By way of summary judgment, the Plaintiffs would have us nullify the foregoing provisions of the Pennsylvania Statute, arguing the such provisions are preempted by the National Labor Relations Act or arguing, in the alternative, that those provisions of the Act are unconstitutionally vague. The Defendants, in turn, seek summary judgment, arguing that the sections of the Act are not preempted by federal law and that the statute is not unconstitutionally vague. We will decline to nullify these sections of the Act and therefore will deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment.

II
In December of 1986 the employees at Bardane Manufacturing Company, one of the Plaintiffs herein (hereinafter Bardane), represented by Local 128 of the International Association of Machinists (hereinafter IAM), went on strike. In the Spring of 1987, Bardane decided to hire strike replacement employees. Thereafter, on several dates in April, May, July, and August of 1987, Bardane advertised in the Scranton Times newspapers for job applicants. None of the advertisements contained a notice that a labor dispute was in progress at the Bardane plant, or that those hired in response to the advertisement, *338 would replace employees involved in a labor dispute.
In the late Summer of 1987 a representative of IAM initiated a private complaint against Bardane, charging that the advertisements violated Section 217.25 of the Pennsylvania Strikebreakers Act referred to above.
The complaint was approved by the District Attorney's Office for Lackawanna County, Pennsylvania, on August 16, 1987. At a preliminary hearing held on October 19, 1987, it was agreed that a stay of prosecution would enter pending resolution of a lawsuit initiated in federal court attacking the constitutionality of the foregoing statute.
This action was initiated on December 31, 1987 by Bardane and the Chamber of Commerce of the United States. The original Defendants were the Commonwealth of Pennsylvania, the then Attorney General of Pennsylvania, Leroy S. Zimmerman, the then District Attorney for Lackawanna County, Ernest D. Preate, Jr., and the then Assistant District Attorney for Lackawanna County, who initiated the criminal action, Andrew J. Jarbola. All individual Defendants were sued in their official capacities only. The District Attorney and the Assistant District Attorney of Lackawanna County filed answers on February 25, 1988. The Commonwealth and the then Attorney General moved to dismiss the complaint as to them, on February 1, 1988, and on the same date the Attorney General filed a motion to proceed as amicus curiae. The Pennsylvania AFL-CIO also moved on March 28, 1988, to intervene as a Defendant.
Several of the parties sought to have this Court abstain from considering this case because, they argued, it was a matter of peculiar state interest. After these motions were duly briefed the Court held a case management conference on May 26, 1988, and heard arguments and discussed the various motions. On November 17, 1988, this Court denied the request to abstain and entered an Order (1) dismissing the Commonwealth of Pennsylvania and then Attorney General Zimmerman from the suit; (2) granting the Attorney General leave to proceed as amicus curiae; and (3) granting the motion of the Pennsylvania AFL-CIO to intervene as a Defendant. At the same time, a schedule was entered allowing for further preparation and procedures in this case.[1]
On March 17, 1989 all parties filed cross motions for summary judgment and a joint statement of undisputed facts.
The motions have been fully briefed and on August 2, 1989, this Court heard oral arguments from all parties on the motions.
The following are the relevant undisputed facts in this case.
(1) On December 20, 1986, bargaining unit employees of Bardane Manufacturing Co. ("Bardane"), who were members of District 128 of the International Association of Machinists Union, began an economic strike against Bardane.
(2) Bardane advertised in The Scranton Times newspaper on several dates in April through August of 1987 for employees to replace those who were out on strike.
(3) Bardane's newspaper advertisements did not state that there was a labor dispute in progress at the place of employment, or that the employment was offered in place of employees involved in a labor dispute.
(4) Bardane's officers and supervisors who interviewed prospective replacement employees informed them during the interviews that there was a strike in progress at Bardane and that their hire would be for the purpose of replacing those involved in the labor dispute.
(5) A representative of the International Association of Machinists initiated a private criminal complaint against Bardane for violation of 43 Pa.Stat.Ann. Section *339 217.25 because Bardane's newspaper advertisements did not state that a labor dispute was in progress or that the employment offered was in place of strikers.
(6) The private criminal complaint lodged against Bardane was approved for prosecution by the District Attorney's Office for Lackawanna County on August 16, 1987.
(7) A preliminary hearing was scheduled for October 19, 1987, in Lackawanna County Central Court, Scranton, Pennsylvania, at which time and place representatives of the Employer, Union and District Attorney's Office were in attendance.
(8) At the scheduled preliminary hearing, Bardane and the District Attorney's Office for Lackawanna County (the latter, upon consultation with and with the knowledge and approval of the Union, through its representative at the hearing) stipulated to certain facts as set forth in the transcript; the District Attorney's Office also agreed during the discussions before the Magistrate about and leading to the referred-to stipulations, that it would stay its prosecution of Bardane for the alleged violation(s) of the Pennsylvania Strikebreakers Act pending resolution of the instant challenge to that Act.
(9) In accordance with the parties' stipulations and agreement, a continuance of the hearing was granted.
(10) Bardane is an "employer" within the meaning of the National Labor Relations Act, as amended 29 U.S.C. Section 152(2).
(11) District 128 of the International Association of Machinists is a "labor organization" within the meaning of the National Labor Relations Act, as amended, 29 U.S.C. Section 152(5).

III
The Plaintiffs would have us grant summary judgment in their favor arguing as follows:
(A) Section 5 and the related provisions of Section 6 of the Pennsylvania Strikebreakers Act are preempted by the National Labor Relations Act and therefore void pursuant to the Supremacy Clause of the United States Constitution....
(1) Section 5 and the related provisions of Section 6 of the Pennsylvania Strikebreakers Act impermissibly regulate the replacement of strikers, an area Congress decided to leave unregulated....
(2) The exclusive jurisdiction of the NLRB preempts Section 5 and the related provisions of Section 6 of the Pennsylvania Strikebreakers Act....
(B) Section 5 of the Pennsylvania Strikebreakers Act is unconstitutionally vague.
The Defendants not only respond in contravention to the Plaintiffs' arguments, but also filed summary judgment on their behalf, arguing that the Act is not preempted by any federal law or by the Constitution of the United States and further that the Act is not unconstitutionally vague. They, therefore, seek summary judgment asking us to allow the pertinent sections of the Act to remain in place.

IV
All of the parties hereto agree that the Supreme Court in several cases has defined parameters within which we must consider the present arguments. In Belknap, Inc. v. Hale, et al., 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 Justice White speaking for the majority, pointed out as follows:
Our cases have announced two doctrines for determining whether state regulations or causes of action are preempted by the NLRA. Under the first, set out in San Diego Building Trades Council v. Garmon, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775] (1959), state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the Act. Id., at 245 [79 S.Ct. at 779.] The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility. Id., at 243-244 [79 S.Ct. at 778-779]; Sears, Roebuck & Co. v. Carpenters, 436 U.S. 180, 200 [98 S.Ct. 1745, 1759, 56 L.Ed.2d 209] (1978); *340 Farmer v. Carpenters, 430 U.S. 290, 296-297 [97 S.Ct. 1056, 1061-1062, 51 L.Ed.2d 338] (1977). In such cases, the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the National Relations Board's ability to adjudicate controversies committed to it by the Act, Farmer v. Carpenters, supra, at 297 [97 S.Ct. at 1061]; Sears, Roebuck & Co. v. Carpenters, 436 U.S. at 200 [98 S.Ct. at 1759], and the risk that the State will sanction what the Act protects. Id., at 205 [98 S.Ct. at 1761]. The second preemption doctrine set out in Machinists v. Wisconsin Employment Relations Commission, 427 U.S. 132 [96 S.Ct. 2548, 49 L.Ed.2d 396] (1976), proscribes state regulation and state-law causes of action concerning conduct that Congress intended to be unregulated, id., at 140 [96 S.Ct. at 2553], conduct that was to remain a part of the self-help remedies left to the combatants in labor disputes, id., at 147-148 [96 S.Ct. at 2556-2557].
In Belknap, supra, in the course of an economic strike, the employer advertised for and hired "permanent replacements for striking employees." Under federal law, where employees engage in an economic strike, the employer may hire permanent replacements whom he need not discharge even if the strikers offer to return to work unconditionally. However, if the strike is an Unfair Labor Practice strike, the employer must discharge replacements in order to accommodate returning strikers. Based on alleged conduct of the employer the Union filed unfair labor practice charges with the National Labor Relations Board. The employer countered with charges of its own, and complaints were issued against both parties. In the meantime, the employer assured its replacement employees that they would continue to be permanent replacements. The unfair labor practice complaints were later dismissed by the Board pursuant to a settlement agreement between the parties under which the employer agreed to reinstate the striking employees. The replacement workers who were laid off to make room for the returning strikers then sued the employer in a Kentucky State Court to recover damages for misrepresentation and breach of contract. The trial court granted summary judgment for the employer on the ground that the dismissed replacement employees' causes of action were preempted by the National Labor Relations Act. The Kentucky Court of Appeals reversed that decision and the Supreme Court of the United States affirmed the Kentucky Court of Appeals.
The Kentucky Court of Appeals first concluded that preemption was inappropriate because Belknap's alleged activities were not unfair labor practices. The Court also concluded, however, that the suit was not preempted because the contract and misrepresentation claims were only of peripheral concern to the NLRA, and were deeply rooted in local law.
The employer argued that Congress intended the respective conduct of the Union and the employer during the strike should be "controlled by the free play of economic forces", and that entertaining the action against the employer was an impermissible attempt by the Kentucky courts to regulate and burden one of the employer's primary weapons during an economic strike, that is, the right to hire permanent replacements. The employer argued further that to permit the suit filed in the case would upset the delicate balance of forces established by the federal law. Additionally, the employer argued that to subject it to costly suits for damages under State law, for entering settlements calling for the return of strikers, would also conflict with the Federal Labor Policy favoring the settlement of labor disputes.
In disposing of these arguments, the Supreme Court held:
Arguments that entertaining suits by innocent third parties for breach of contract or for misrepresentation will "burden" the employer's right to hire permanent replacements, are no more than arguments that "this is war" that "anything goes", and that promises of permanent employment that under federal law the employer is free to keep, if it so *341 chooses, are essentially meaningless. It is one thing to hold that the federal law intended to leave the employer and the union free to use their economic weapons against one another, but it is quite another to hold that either the employer or the union is also free to injure third parties without regard to the normal rules of law governing those relationships. We cannot agree ... that Congress intended such a lawless regime.
The constitutional provision known as the "Supremacy Clause" requires that state laws which conflict or interfere with federal legislation must give way. The federal constitution and the federal laws are considered to be "the supreme law of the land" and "judges in every state are bound thereby; anything in the Constitution or laws of any state to the contrary notwithstanding". U.S. Constitution Art. VI, Cl. 2. As has often been pointed out, determining when that conflict or interference exists is frequently a "complex and intricate matter" particularly when one tries to understand or determine the intent of Congress. The ultimate question one seeks to answer is "whether Congress intended to preempt the subject matter of the state legislation". There is no doubt that the National Labor Relations Act involves regulation in the field of labor relations, but it has stated over and over again that Congress by this Act has not preempted the entire rights of the states in this area. Rather, it "leaves much to the states, though Congress has refrained from telling how much". Garner v. Teamsters et al., 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953).
The Plaintiffs do not argue that the advertisements were prohibited by the National Labor Relations Act, but argue that the enforcement of the statute in question "has the effect of restricting the employer's federally protected right to operate during a strike and to hire replacements."
The Plaintiffs argue correctly, that an employer is free to permanently replace striking employees in order to continue operation of its business and bring pressure on the Union to reach an agreement in the course of an economic strike. From that premise the Plaintiffs argue that "the provisions of the Pennsylvania Strikebreakers Act in dispute here alter the well established right of management to combat the Union's decision to engage in an economic strike by requiring that notice of any strike be placed in newspaper advertisements for replacement workers. This requirement has both the intent and the effect of impeding the employer's ability to recruit replacements for striking employees, thereby shifting the carefully conceived and well recognized balance of power available to the respective parties in a labor dispute...." We point out parenthetically that there is nothing in the record in this case which supports a conclusion that the potential pool of employees is in any way affected by this requirement in the act. On the other hand, it requires no huge stretch of the imagination to envision difficulties which could arise were large numbers of potential employees to seek to replace strikers without that knowledge. It is conceivable that such potential employees could be subjected to all types of abuse and could acquire unto themselves reputations which would follow them into future potential employment. Strike-breaking efforts are always fraught with potentially serious difficulties and a state certainly has the authority and power under its general mandate to keep the peace, to initiate legislation which would keep such potentialities to a minimum.
The Plaintiffs in pressing their argument, rely on several cases in which state statutes were found to be preempted by the federal labor legislation. Our attention is brought to International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. C.M. Smillie Co., 139 Mich.App. 731, 362 N.W.2d 780 (1984), where a union brought suit to enjoin an employer from advertising for employees in violation of a Michigan statutory provision prohibiting certain advertising. It is true that the statutory provision there involved is similar to Section 5 of the Pennsylvania Strikebreakers Act which we consider here. The Court there held:

*342 We believe that advertising for strike replacements cannot realistically be separated from the employer's right to hire replacements, which indisputably is "part and parcel of the process of collective bargaining" that Congress intended to be governed by the free play of economic forces. Citing Machinists, supra. As acknowledged in plaintiff's complaint, regulation of advertising directly affects the employer's success in hiring replacements.
While the Michigan Court of Appeals indicated it could "perceive no state interest that would overcome the presumption of preemption", it is not difficult for this Court to do so. As indicated above, there is always a strong possibility of severe confrontations in the course of a strike and in particular, in the course of company's efforts to replace striking employees. In such a volatile situation, keeping peace is an overwhelming obligation of the state, not only in relation to the strikers and potential replacement employees, but also in relation to the general public. When one balances this obligation with the minimal effect that would be occasioned to the employer's right to hire replacement workers, the scales tip considerably in favor of supporting such legislation. We are not bound by the decision of the Michigan Court and find that we cannot agree with its reasoning. Similarly, in USA Chamber of Commerce v. State of New Jersey, et al., 89 N.J. 131, 445 A.2d 353 (1982), a New Jersey "Strikebreakers Act", was found unconstitutional. That Act proscribed the importation, transportation or supplying of individuals for employment in the State of New Jersey for the purpose of interfering by force or violence with lawful employer/employee bargaining, or replacing employees who are lawfully on strike or locked out. The Act forbade anyone not directly involved in the strike or lock out from recruiting persons to replace such employees and prohibited employment agencies from knowingly referring applicants to an employer whose employees were then on strike or locked out.
In striking down that Act, the New Jersey Supreme Court found that:
Since employers have the right under the federal law to hire replacement employees in the event of a strike, the statutory provisions contravene the labor management economic balance established by the federal act.
We find that the New Jersey Act involved was so much different in content and purpose, than the one here under consideration, that reliance on that case and the reasoning therein is misplaced and does not sustain the Plaintiffs' argument.
Again, in the case of the Michigan Chambers of Commerce v. Michigan, (115 LRRN 2887) the Michigan Circuit Court for Oakland County, Michigan held a Michigan Strikebreakers Act unconstitutional. That Act, among other things, proscribed replacement of striking or locked out employees by individuals who "customarily or repeatedly" offer themselves for employment in place of employees on strike or who have been locked out. Here again, we are talking about a different Act designed for different purposes and to proscribe conduct specifically related to the types of people an employer can hire in the event of a strike. The Pennsylvania Act makes no such proscriptions and is not designed to limit the people an employer can employ as replacements for strikers. The Pennsylvania Act, as we have indicated repeatedly, is designed merely to assure the pool of potential employees will have full information about the type of employment available to them before they possibly place themselves in untenable positions.
Finding, then, as we do, that not all laws regulating the replacement of picketing workers are preempted by federal legislation, we likewise find that the Pennsylvania Statute here considered is not such an intrusion into the labor relations field or such a burden upon one of the parties to a labor relations dispute that it should be held unconstitutional by this Court. The Act simply requires honesty and frankness from a potential employer and puts a potential employee in a position to have full knowledge of the situation into which he can potentially place himself. In addition it is some *343 assurance to the community that the labor dispute will be carried on as peacefully and orderly as possible under the circumstances.
We recognize that under the preemption doctrine established in Machinists, supra, employers and unions are free to employ any legitimate self-help weapons in furtherance of their respective bargaining positions. Under this scheme, the use of economic pressure by the parties to a labor dispute is "part and parcel of the process of collective bargaining". In Machinists it was established that Congress "meant to leave these activities unregulated and controlled by the free-play of economic forces, and that these activities, whether of the employer or the Union, were not to be regulable by states any more than by the NLRB". Thus the crucial question and inquiry under the Machinists' doctrine is whether enforcement of a state law would frustrate the basic purposes of the national labor policy announced in the National Labor Relations Act. If the imposition of such a state regulation has a serious impact upon the labor relations issues in dispute between the parties, then, of course, it would be preempted, but where the statute has only a minor or indirect impact on the bargaining process or on labor relations in general, then it is not preempted. Such an act is particularly not preempted where the state has a peculiar interest in regulating the conduct at issue. We have pointed out here that, in our opinion, based upon the submissions in this case, there is little to indicate that there would much of an impact at all on the labor relations matters at issue between these parties, but at the same time, there is a specific state interest in maintaining truthful and honest advertising in the recruitment of employees and in maintaining community peace in the face of labor strife.

V
Plaintiffs argue that Section V of the Pennsylvania Strikebreakers Act should be invalidated on vagueness grounds because "it fails to inform one as to what the state commands or forbids." "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes". Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939) "due process requires that a criminal statute provide adequate notice to a person of ordinary intelligence, that his contemplated conduct is illegal, for no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).
In considering the vagueness argument and the fundamental requirements of due process in relationship to "understanding" a statute, we are directed to determine whether or not (1) that there be fair warning of prohibited conduct and (2) that a statute does not encourage arbitrary or discriminatory enforcement. See Rose v. Locke, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) and Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) and case cited therein. Considering this statute within that legal framework, we find that the statute requires in any instance where an employer is involved in the recruitment or the solicitation for replacement employees, any advertisement or referral must contain adequate notice of a labor dispute and of the fact that the employment offered is to replace strikers. There is nothing complicated or confusing about this language. Always in the interpretation of such statutes we are directed to give the wording of the statute its plain accepted meaning and we are not to strain to find unique or complicated interpretations. We see nothing here in this statute that violates either the fair warning concept or the discriminatory enforcement concept. The language is straightforward and proof of a violation would be likewise simple and uncomplicated. Anyone charged with a violation would readily understand the nature of the charges and would be instantly in a position to defend himself. Thus, we find no validity to the constitutional challenge *344 based upon vagueness or lack of due process.

VI
After review of all submissions and arguments, we will deny the Plaintiffs' motion for summary judgment, which sought to have us declare the Pennsylvania Strikebreakers Act, and particularly Sections 5 and 6 unconstitutional; and we will grant the Defendants' motion for summary judgment, thereby upholding the constitutionality and validity of the statute.
NOTES
[1] In January of 1989, Ernest D. Preate, Jr., was sworn in as the Attorney General of the Commonwealth of Pennsylvania, and Andrew J. Jarbola was sworn in as the District Attorney of Lackawanna County. Mr. Jarbola was, therefore, substituted for Mr. Preate as the District Attorney party for Lackawanna County. Subsequently, Attorney General Preate was allowed to intervene as a Defendant.