The PITTSBURGH PRESS COMPANY, Plaintiff,

v.

Ernest D. PREATE, JR., in his official capacity as Attorney General for the Commonwealth of Pennsylvania, and Robert E. Colville, in his official capacity as District Attorney for the County of Allegheny, Pennsylvania, Defendants.

Civ. A. No. 92–1715.

United States District Court, W.D. Pennsylvania.

Aug. 14, 1992.

Jose Feliciano, Cleveland, Ohio, John A. McCreary, Jr., Pittsburgh, Pa., for plaintiff.

Susan Forney, Harrisburg, Pa., George Janocsko, Joseph J. Pass, Jr., Pittsburgh, Pa., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ZIEGLER, District Judge.

(1) This is a civil action for declaratory and injunctive relief filed by The Pittsburgh Press Company against Ernest D. Preate, Jr., in his official capacity as the Attorney General of the Commonwealth of Pennsylvania, and Robert E. Colville, in his official capacity as the District Attorney of the County of Allegheny, Pennsylvania. Jurisdiction is predicated on 42 U.S.C. § 1983, 28 U.S.C. § 1332 and 28 U.S.C. § 1337.

(2) Plaintiff, The Pittsburgh Press Company, is incorporated under the laws of Pennsylvania and maintains its principle place of business at 34 Boulevard of the Allies, Pittsburgh, PA. Plaintiff publishes and distributes the daily and Sunday editions of The Pittsburgh Press, and also prints and distributes, under a contract with a publisher, a daily newspaper known as the Pittsburgh Post–Gazette.

(3) Defendant, Ernest D. Preate, Jr., is the Attorney General of the Commonwealth of Pennsylvania, and is statutorily designated to represent the Commonwealth in all civil litigation, pursuant to 71 P.S. § 732–204(c). Defendant, Robert E. Colville, is the District Attorney of the County of Allegheny and has primary responsibility for prosecuting all criminal actions within the County of Allegheny County, Pennsylvania.

(4) According to the complaint, The Pittsburgh Press Company alleges that Sections

3(a) and 4 of the Pennsylvania Strikebreakers Act, 43 P.S. §§ 217.23(a) and 217.24, are preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* Hence, according to the Pittsburgh Press Company, the application of the Strikebreakers Act by the Court of Common Pleas of Allegheny County, Pennsylvania, at GD 92–13120, on July 27, 1992, in granting a preliminary injunction, deprived the Pittsburgh Press of rights, privileges and immunities guaranteed by federal law, specifically 42 U.S.C. § 1983 and the National Labor Relations Act.

(5) The Pittsburgh Press Company filed a timely notice of appeal to the Superior Court of Pennsylvania from the order of July 27, 1992, and requested a stay. The Press also notified the Attorney General of Pennsylvania, as required by state Rule 521, that the constitutionality of the Strikebreakers Act was raised in the proceedings before the Hon. Maurice Louik in the Court of Common Pleas of Allegheny County, Pennsylvania. In addition, in the application for stay filed with the Superior Court of Pennsylvania, the Press contends that:

(a) The injunction is without foundation since the Pennsylvania Strikebreakers Act is void as a matter of law because the act is preempted by federal law.

(b) The injunction is an impermissible intrusion upon the rights of the Press under federal labor law.

(c) The injunction constitutes a prior restraint on the right of the Pittsburgh Press to distribute newspapers in violation of the First Amendment to the United States Constitution and Article 1, § 7 of the Pennsylvania Constitution.

(6) In paragraphs 18–20 of the instant complaint, and plaintiff's Ex. C, plaintiff refers to another state court civil action filed by The Pittsburgh Press Company against Local 211 and various officers of the Union at GD 92–13240, in the Court of Common Pleas of Allegheny County, Pennsylvania. In that case, the defendants raised the affirmative defense, amidst allegations of mass picketing, that the Pittsburgh Press was not entitled to injunctive relief because it allegedly violated the Pennsylvania Strikebreakers Act and therefore the equitable doctrine of unclean hands barred relief. No decree was entered by the Hon. Lee Mazur because the Pittsburgh Press decided that it would "cease and desist from printing and distributing the newspaper temporarily." See, plaintiff's Ex. C, at 90. Apparently the pickets dispersed with this announcement, and that civil action was continued generally. According to the instant complaint, the defense of unclean hands based on the Strikebreakers Act deprived the Pittsburgh Press of rights, privileges and immunities guaranteed by federal law.

(7) Pending before this court is the motion of The Pittsburgh Press Company for a preliminary injunction. The Pittsburgh Press requests an injunction enjoining Ernest D. Preate and Robert E. Colville, in their official capacities "from prosecuting or enforcing in any way Sections 3(a) and (4) of the Pennsylvania Strikebreakers Act, 43 P.S. § 217.23(a) and 217.24, on the basis that these provisions are preempted by federal law as applied to the Press under the circumstances in this case." Reference is made to the state court civil actions at GD 92–13120 and 13260. The "wherefore clause" and the proposed order submitted to this court request an injunction enjoining defendants from enforcing Sections 3(a) and 4 of the Strikebreakers Act against The Pittsburgh Press Company.

(8) In order to obtain equitable relief, The Pittsburgh Press Company must establish by a preponderance of the evidence the following elements:

(a) Irreparable harm, *pendente lite*, if relief is not granted;

(b) Likely success on the merits of the litigation;

(c) The possibility of harm to other interested persons from the grant or denial of the injunction; and

(d) The public interest, if any.

*See, Arthur Treacher's v. A & B Management Corp.,* 689 F.2d 1137, 1143 (3d Cir. 1982).

(9) We find that The Pittsburgh Press Company has failed to establish by a

preponderance of the evidence that it will suffer irreparable harm, if injunctive relief is denied. The Press has failed to present any evidence before this court that the District Attorney of Allegheny County, Pennsylvania, has or will file a criminal complaint against the Press for its conduct during the current labor dispute. Indeed, during oral argument, counsel for the District Attorney advised the court that no such action has been instituted by the local prosecutor, and no such action is contemplated. The same finding applies with respect to the Attorney General who has been sued, according to the Press, because he is the chief law enforcement officer in the state and charged with the responsibility of defending enactments of the General Assembly.

■■■ (10) The United States Supreme Court has counseled the lower federal courts that they should not enjoin pending state court criminal actions, absent extraordinary circumstances. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The rationale is clear. A defendant can raise constitutional defenses to a state criminal prosecution in state court and, if the state courts fail to recognize or follow a federal right or defense, the United States Supreme Court will correct the error on certiorari to that court. In short, a state court criminal defendant has an adequate remedy at law, and federal equitable interference is inappropriate. We find that if federal jurisprudential concerns counsel against interference with *pending* state court criminal prosecutions, as in *Younger,* it applies with even greater force with respect to a criminal action which is neither filed nor contemplated. We find that the Pittsburgh Press has an adequate remedy at law if the District Attorney or Attorney General institute a criminal action in the Court of Common Pleas of Allegheny County, Pennsylvania.

(11) There is no evidence of record that the Attorney General or the District Attorney are acting in bad faith; or threatening the Pittsburgh Press with a series of repeated criminal prosecutions; or acting under a flagrantly unconstitutional statute.

Indeed, in *Bardane Mfg. Co. v. Jarbola,* 724 F.Supp. 336 (M.D.Pa.1989), the district court held that Sections 5 and 6 of the Pennsylvania Strikebreakers Act were neither preempted by the National Labor Relations Act nor unconstitutionally void. While the defendants here are state actors, they simply have not caused any harm to The Pittsburgh Press Company and, as rehearsed, no such action is contemplated. As the Supreme Court noted in *Younger v. Harris,* "a federal lawsuit to stop a prosecution in a state court is a serious matter. And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases." 401 U.S. at 42, 91 S.Ct. at 749. Absent such evidence, we have no authority to issue an injunction based on speculation and conjecture concerning the future decisions of local law enforcement officials. *Id.*

(12) Plaintiff also argued before the Hon. Maurice Louik that the Strikebreakers Act was inapplicable and proffered witnesses to support the contention. The state court declined the proffer. Hence, it is possible that the appellate courts of Pennsylvania may remand the action at GD 92–13120 to determine whether the statute is applicable. In that event, the constitutional questions may be altered or obviated. We find that the Pittsburgh Press will not suffer irreparable harm pending the outcome of the state court proceedings.

■■ (13) The Pittsburgh Press Company makes the novel argument that the irreparable harm to which it is exposed is the utilization of the Strikebreakers Act by the state courts to grant injunctive relief against the company at GD 92–13120 and to potentially deny relief at GD 92–13240. This argument fortifies our view that plaintiff is not entitled to equitable relief against either the Attorney General or the District Attorney, and requires us to examine the question whether this court should abstain and dismiss the complaint in the face of the ongoing state proceedings and the teachings of *Pennzoil Co. v. Texaco Co., Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the *Rooker–Feldman* doc-

440

trine, and *Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. of New York and New Jersey*, 973 F.2d 169 (3d Cir.1992).

(14) In *Pennzoil v. Texaco*, the Supreme Court concluded that a federal district court did not have subject matter jurisdiction to enjoin Pennzoil from enforcing an $11 billion state court judgment pending appeal to the appellate courts of Texas. Texaco's argument that the state law, which required a supersedeas bond of $13 billion, violated federal due process guarantees under 42 U.S.C. § 1983 was rejected as a basis for federal jurisdiction. The Supreme Court instructed the federal courts to abstain from adjudicating the merits of a dispute which involved an important state interest, namely, the "importance to the States of enforcing the orders and judgments of their courts." 481 U.S. at 13, 107 S.Ct. at 1527. Here, as there, the people of Pennsylvania have an important and substantive interest in enforcing judicial orders within the orderly processes of the courts of Pennsylvania, with ultimate review of federal questions by the United States Supreme Court, and that interest outweighs the federal interest, if any. *See also, Bardane Mfg. Co. v. Jarbola*, 724 F.Supp. 336, 342 (M.D.Pa.1989). (Pennsylvania has interest in maintaining peace during labor disputes and that interest extends to the public and the parties).

(15) *Pennzoil* relied on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and held that federal subject matter jurisdiction is absent in civil proceedings where, as here, there are ongoing state proceedings that are judicial in nature; the state proceedings implicate important state interests; and the state proceedings afford an adequate opportunity to raise federal claims. We hold that, under the circumstances, subject matter jurisdiction is lacking and the complaint must be dismissed.

■ (16) The *Rooker–Feldman* doctrine also requires that we dismiss the complaint. *Dist. of Col. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). In those cases, the Supreme Court held that lower federal courts may not overturn state court decisions or evaluate federal claims that are "inextricably intertwined" with the state court's decision. Here, the constitutional claims of plaintiff were directly addressed in the proceedings before two state court trial judges, *see*, Plaintiff's Ex. A at 68–82, and are now before the Superior Court of Pennsylvania. In addition, the Press requested a stay before the Superior Court on the identical grounds that are now being pursued in this court. We will take judicial notice of the pleadings before the Superior Court. The Press also has the opportunity to present these federal claims to the Supreme Court of Pennsylvania and ultimately the United States Supreme Court.

(17) It would be particularly inappropriate for a federal court, in our judgment, to render a decision on a question that goes to the heart of a ruling by a state court trial judge and is now pending before a state appellate court. Proper respect for the independence and competence of the state courts requires that we refrain from interfering with the state courts' process by injunctive or declaratory relief. As Judge Weis has noted, in another context, "[t]he Pennsylvania courts have demonstrated no reluctance in meeting their obligation to follow federal law. In several opinions, the Superior Court has acknowledged and applied ERISA preemption." *United States Steel Corp. Plan v. Musisko*, 885 F.2d 1170, 1178, n. 4 (3d Cir.1989). The Pittsburgh Press Company has the opportunity to pursue these federal claims which are inextricably intertwined with the state proceedings through the state courts, with relief from error to the United States Supreme Court.

(18) *Port Authority Police Benevolent Assoc. v. Port Authority of New York and New Jersey*, 973 F.2d 169 (3d Cir.1992) supports our conclusion that we should abstain from exercising jurisdiction. There, the Court of Appeals affirmed the dismissal of a federal action alleging violation of protected speech under the First Amendment because the same constitutional argument

had been raised unsuccessfully in a New York state trial court. The Court of Appeals relied on *Younger v. Harris* and the *Rooker–Feldman* doctrine in concluding that the district court properly declined to exercise jurisdiction. We find that *Port Authority* is indistinguishable from the present case and controlling.

(19) *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) teaches that we should abstain under the circumstances. The Pennsylvania Strikebreakers Act raises unsettled questions of state law and the Pennsylvania courts could find among other things that the statute is inapplicable to the Pittsburgh Press or remand to more fully develop the record prior to any constitutional determination.

█ (20) The Pittsburgh Press Company urges that we enter a judgment declaring that the Pennsylvania Strikebreakers Act is unconstitutional because "the Company is not asking this Court (1) to rule on whether or not the trial court in the Distributors' Action erred in issuing a preliminary injunction or (2) to issue an injunction requiring the trial court to reverse its decision." Brief of Plaintiff at 25–26. We decline to address the constitutional questions in this case for several reasons. *First, Port Authority Police Benevolent Association* is controlling. *Second,* a declaratory judgment would have the same effect as a preliminary injunction. *Third,* the Supreme Court has held that *Younger* deference is also applicable to a suit seeking only a declaratory judgment that the statute under which the federal plaintiff was being prosecuted was unconstitutional. Thus, *Younger* applies regardless whether a plaintiff seeks injunctive or declaratory relief. *Samuel v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). *Fourth,* a declaratory judgment would undermine the policy considerations of the *Rooker–Feldman* doctrine since the constitutional questions at bar are inextricably intertwined with the issues now pending before the Superior Court. And *fifth,* a constitutional pronouncement by this court may amount to little more than an advisory opinion be-

cause there are a host of possibilities that may evolve from the appeal before the Superior Court, including, *inter alia,* remand, fact finding, inapplicability of the statute, constitutional adjudication, and possible review by the United States Supreme Court.

(21) We have given serious consideration to the remaining contentions of the parties and find them without merit. The motions of defendants and the intervenor to dismiss will be granted.