KAPIOLANI MEDICAL CENTER FOR
WOMEN AND CHILDREN,
Plaintiff,

v.

The State of HAWAII, as a State of the Federal Union; the Honorable Benjamin J. Cayetano, In His Official Capacity as the Governor of the State of Hawaii; and Peter B. Carlisle, in His Official Capacity as the Prosecuting Attorney of the City and County of Honolulu, State of Hawaii, Defendants.

No. CV. 99–00895 DAE.

United States District Court,
D. Hawaii.

Jan. 31, 2000.

Christopher S. Yeh, Marr Jones & Pepper, Honolulu, HI, for Kapiʻolani Medical Center for Women and Children, plaintiff.

Rebecca L. Covert, Takahashi Masui & Vasconcellos, Honolulu, HI, for Hawaii Nurses' Association, The, Collective Bargaining Organization of, intervenor.

Frances E.H. Lum, Department of the Attorney General, Honolulu, HI, for Benjamin J. Cayetano, in his official capacity as the Governor of the State of Hawaii, Earl Anzai, in his official capacity as the Attorney General of the State of Hawaii, defendants.

Cindy S. Inouye, Corporation Counsel, City & County of Honolulu, Honolulu, HI, for Peter B. Carlisle, in his official capacity as the Prosecuting Attorney of the City and County of Honolulu, State of Hawaii, defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, Chief Judge.

The court heard Plaintiff's Motion on January 21, 2000. Andrew L. Pepper, Esq., and Phillip Moon, Esq., appeared at the hearing on behalf of Plaintiff; Frances E.H. Lum, Deputy Attorney General, appeared at the hearing on behalf of Defendants State of Hawaii, Governor Benjamin J. Cayetano, and Attorney General Earl I. Anzai; Cindy Inouye, Deputy Corporation Counsel, appeared at the hearing on behalf of Defendant Peter B. Carlisle. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment and declares Hawaii Revised Statutes Chapter 379–2 unenforceable as it applies to private employers and private third party employment or recruitment agencies.

### BACKGROUND

Plaintiff filed a motion for summary judgment on January 7, 2000 to have Hawaii Revised Statutes Chapter 379 declared unconstitutional, preempted, unlawful and void *ab initio* in its entirety. Defendants State of Hawaii, Governor Cayetano and Attorney General Anzai filed their opposition on January 14, 2000, Defendant Peter Carlisle filed an opposition on January 14, 2000 (collectively "Defendants"). Defendants claim that Plaintiff lacks standing and that Chapter 379 is not preempted by federal law. Plaintiff replied on January 18, 2000.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file that

it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

## DISCUSSION

This case involves the question of the constitutionality or federal preemption of Hawaii Revised Statutes Chapter 379.

I. *Hawaii Revised Statutes Chapter 379-2*

Hawaii Revised Statutes Chapter 379 provides in relevant part that:

It shall be unlawful for any person:

(1) To recruit, procure, supply, or refer any person for employment in place of an employee involved in a labor dispute in which the person recruiting, procuring, supplying, or referring is not directly interested.

(2) When involved in a labor dispute, to employ in place of an employee involved in such labor dispute any person who customarily and repeatedly offers oneself for employment in the place of employees involved in a labor dispute, or to knowingly employ any person in place of an employee involved in a labor dispute

who is recruited, procured, supplied, or referred for employment by any person not directly involved in the labor dispute.

(3) Who customarily and repeatedly offers oneself for employment in place of employees involved in a labor dispute to take or offer to take the place in employment of employees involved in a labor dispute.

(4) Involved in a labor dispute to contract or arrange with any other person to recruit, procure, supply, or refer persons for employment in place of employees involved in the labor dispute.

Haw.Rev.Stat. § 379-2.

"Any person, or agent, or officer thereof; who violates this chapter is punishable by a fine of not more than $1,000 or imprisonment of not more than one year, or both." Haw.Rev.Stat. § 379-4.

A. *Standing*

Defendants allege that Plaintiff does not have standing to challenge Hawaii Revised Statutes Chapter 379 in its entirety. Defendants argue that Plaintiff could not be prosecuted for a violation of sections 379-2(1) and 379-2(3) because these sections impose liability on the employment agency or individual which aids the employer in finding replacement workers and on the replacement worker who takes the place of the striking employee. Defendants argue that Plaintiff does not fit that description nor do those sections have an adverse impact on Plaintiff.[1]

In order to establish standing Plaintiff must demonstrate the following:

First, the plaintiff must have suffered an injury in fact, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct

---

1. There is no dispute that Plaintiff has standing to challenge sections 379-2(2) and 379- 2(4).

complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*U.S. v. Hays,* 515 U.S. 737, 742–3, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (citation omitted).

■ "A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *County Court of Ulster County, N.Y. v. Allen,* 442 U.S. 140, 154–155, 99 S.Ct. 2213, 60 L.Ed.2d 777 (citations omitted).

■ There is no question that Plaintiff has standing with respect to sections 379–2(2) and 379–2(4) because Plaintiff faces a real threat of prosecution under these sections of the statute. The question is whether Plaintiff's interests are adversely impacted by the application of sections 379–2(1) and 379–2(3). This court concludes they are since Plaintiff could be prosecuted under Hawaii law for criminal conspiracy under these sections.

Hawaii's broad criminal conspiracy statute states that,

A person is guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a crime: (1) He agrees with one or more persons that they or one or more of them will engage in or solicit the conduct or will cause or solicit the result specified by the definition of the offense; and (2) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

Haw.Rev.Stat. § 705–520.

Here, there is injury in fact because Plaintiff contacted and engaged in affirmative discussions directing an employment agency to find replacement workers and that agency took steps as a result of the contact with Plaintiff which could be construed as violative of Chapter 379–2. In previous hearings in this court, Defendants stated that they would not refrain from enforcing any part of Chapter 379, including 379–2(1) and 379–2(3). Thus, Plaintiff could be prosecuted for conspiracy to violate sections 379–2(1) and/or 379–2(3) under Hawaii's broad conspiracy statute for promoting or facilitating the commission of a crime ·by engaging in discussions with the employment agency and agreeing with that agency to find, hire and advertise for replacement workers.

Furthermore, Plaintiff's rights are adversely impacted by these sections because neither the employment agency nor the replacement worker would want to subject themselves to possible prosecution, thus making it difficult for the employer to find and hire replacement workers. *See Professional Staff Nurses Association v. Dimensions Health Corp.,* 110 Md.App. 270, 677 A.2d 87, 100 (1996) ("[B]y proscribing the types of individuals who may replace striking workers, and by limiting the 'persons' available for employment, the General Assembly indirectly interfered with self help economic activities of management."); *see also Chamber of Commerce of U.S. v. State of New Jersey,* 89 N.J. 131, 445 A.2d 353, 362 (1982) (Regulations against activities of persons acting on behalf of, or in support of the employer's attempt to obtain new employees, directly affects management practices and "contravene[s] the labor-management economic balance.").

The court therefore finds that Plaintiff has standing to seek declaratory judgment that all sections of Chapter 379–2 are unconstitutional or preempted.

B. *Federal Preemption of Hawaii Revised Statutes 379–2*

Plaintiff claims that Hawaii Revised Statutes 379–2 is preempted by federal law.

■ The Supreme Court has recognized two lines of preemption analysis under the National Labor Relations Act ("NLRA"). The first line, known as "Garmon" preemption, prevents states from regulating any conduct subject to the regulatory jurisdiction of the National Labor Relations Board (the "NLRB"), such as an activity which is arguably protected or prohibited

by the NLRA. *See San Diego Bldg. Trades Council Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The second line, known as "Machinists" preemption, prevents a state from interfering with conduct that Congress intended to be unregulated by either state or federal law. *See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL—CIO v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). "The *Machinists* doctrine recognizes that there are areas of labor-management relations not within the jurisdiction of the Board, and thus not subject to *Garmon* preemption, but nonetheless outside the proper scope of state regulation." *Bassette v. Stone Container Corp.,* 25 F.3d 757, 759–760 (9th Cir.1994) (citing *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 749, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)). Thus, the issue is which preemption doctrine properly applies in this case.

■ Defendants argue that the *Garmon* line of preemption analysis applies here but that the state statute in question is not preempted under *Garmon* because it falls under the exceptions to preemption laid out in *Garmon.* However, Defendants' argument lacks merit because the *Garmon* line of analysis does not apply in this case, let alone the exceptions thereunder.

First, *Garmon* preemption and the exceptions thereunder apply only when the activity regulated by the state statute is actually or arguably protected or prohibited by the NLRA. Here, Chapter 379–2 regulates the use of economic weapons since it places restrictions on the employer when hiring replacement workers. The

use of economic weapons, such as hiring replacement workers, is not specifically addressed by the NLRA.[2] *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 111, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) ("the right to make use of 'economic weapons,' [is] not explicitly set forth in the [NLRA]."); *See also Charlesgate Nursing Center v. State of Rhode Island,* 723 F.Supp. 859, 866 (D.R.I.1989) (the hiring of replacement workers via an agency "constitutes a peaceful form of self help that is not prohibited by the NLRA."); *See also Smith v. National Steel & Shipbuilding Co.,* 125 F.3d 751, 755–756 (9th Cir. 1997). Further, in *Machinists,* the Supreme Court noted that Congress had created a comprehensive enumeration of unfair labor practices in § 8 of the NLRA and had refrained from including the use of economic weapons in that section. *Charlesgate,* 723 F.Supp. at 865. Thus, the Court inferred from Congressional intent that peaceful weapons of economic self help were to be left unregulated. *Id.* Therefore, the *Garmon* preemption line of analysis does not apply to this case since the use of economic weapons are not arguably protected or prohibited by the NLRA.

However, even if the *Garmon* preemption doctrine was found to apply, the statute in question does not fit within the exceptions to *Garmon* preemption.

In *Garmon,* the Supreme Court held that an exception to preemption of state regulation by the NLRA exists: "where the activity regulated is merely a peripheral concern of the Labor Management Relations Act, or where the regulated conduct touches interests so deeply rooted in local feeling and responsibility that, absence of compelling congressional direction, ...

---

**2.** "Section 7 of the NLRA protects the rights of employees in collective bargaining, including their right to strike, their right to picket, and their right to join or not to join a union ... Section 8 of the NLRA regulates unfair labor practices. In general, section 8 prohibits employers and labor organizations from interfering with the employee rights protected under section 7 of the Act. Section 8(a) prohibits unfair conduct by employers toward

employees, including, for example, discrimination between union and non-union members. Section 8(b) of the Act regulates unfair labor practices by labor organizations. Unfair labor practices such as threats against employees, spying on employees, and discrimination between union and non-union members are prohibited by the requirements of sections 8(a) and (b)." *Babler Bros. Inc. v. Roberts,* 995 F.2d 911, 914 (9th Cir.1993).

[the court] cannot infer that Congress had deprived the States of the power to act." *Garmon*, 359 U.S. at 243–44, 79 S.Ct. 773.

Defendants assert that the statutes address a matter of vital local interest because they are designed to prevent the violence that might otherwise occur if replacement workers cross picket lines.

However, the prevention of violence by picketers argument does not satisfy the "local interests" exception because Chapter 379-2 does not actually prohibit violence or even picketing. In *Charlesgate*, the court found that a statute which regulated the employers right to employ replacement workers which was not directly aimed at preventing violence was preempted by federal law because the statute in fact sought "to regulate a facet of the collective bargaining process that Congress intended to remain unregulated." *Charlesgate*, 723 F.Supp. at 866.

Here, although this court recognizes that the State has an interest in preventing violence and in maintaining the public health and welfare, Chapter 379-2 by its plain language does not expressly prohibit violence or even attempt to prevent it. Instead, Chapter 379-2 imposes restrictions on the employers' manner of hiring replacement workers, it in no way addresses violence or seek to regulate the threat of violence. Further, it is no less repugnant than a statute which would prohibit lawful picketing by unions on the ground that it would lessen the threat of violence. Thus, as in *Charlesgate*, the *Garmon* "deeply rooted in local feeling" exception does not apply to this case since the Hawaii statute does not approach the prevention of violence issue in any meaningful way. Moreover, even with this statute in place the Plaintiff or other employers could hire large numbers of replacement workers themselves.

Further, the statute does not fit into the exception to *Garmon* preemption because the challenged statute has much more than a peripheral impact on federal labor law concerns. The statute substantially interferes with the availability of one of an employer's principal economic weapons. Thus, the statute "fundamentally alter[s] the economic balance between labor and management envisaged by the NLRA." *Charlesgate*, 723 F.Supp. at 866.

Defendants attempt to minimize the impact by pointing out that the statute does not prevent employers from hiring replacement workers on their own. However, as long as the statute interferes with an employer's right to employ replacements, there is more than a peripheral impact on federal labor law. The

> Preemption doctrine prohibits state action that infringes on such rights in more than a collateral way as well as action that completely eliminates them. Since the statutes in question significantly limit an employer's ability to hire replacement workers, they fall under the aegis of that prohibition. In short, a state may no more restrict or eliminate an employer's right to hire replacement workers during a strike than it may restrict or eliminate an employee's right to obtain alternate employment during the strike.

*Charlesgate*, 723 F.Supp. at 866–867.

Here, the statute severely limits an employer's right to hire replacements since it limits the pool of labor from which an employer can draw by limiting the employer's methods in locating such labor, particularly in an island state where skilled workers may be limited or unavailable in sufficient numbers and it is necessary to advertise for workers on the mainland United States.

Rather than *Garmon*, the instant case is similar to *Machinists* because this case involves a state statute which attempts to regulate areas which Congress intended to be free from regulation. *See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976).

"It is well recognized that an employer may replace striking employees in an ef-

fort to carry on his business. *N.L.R.B. v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 345, 58 S.Ct. 904, 82 L.Ed. 1381 (1938). The employer's right to hire replacement employees is considered an economic weapon of self-help which is permitted by federal law. *Machinists*, 427 U.S. at 132, 96 S.Ct. 2548 (1976)." (Order Granting Plaintiff's Motion for Temporary Restraining Order filed December 23, 1999, (the "Previous Order")).

> Congress meant that these activities, whether of employer or employees, were not to be regulated by States any more than by the NLRB, for neither States nor the Board is afforded flexibility in picking and choosing which economic devices of labor and management shall be branded as unlawful. Rather, both are without authority to attempt to introduce some standard of properly balanced bargaining power, or to define what economic sanctions might be permitted negotiating parties in an "ideal" or "balanced" state of collective bargaining. To sanction state regulation of such economic pressure deemed by the federal Act desirably left for the free play of contending economic forces, is not merely to fill a gap by outlawing what federal law fails to outlaw; it is denying one party to an economic contest a weapon that Congress meant him to have available. Accordingly, such regulation by the State is impermissible because it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Machinists*, 427 U.S. at 149–151, 96 S.Ct. 2548 (citations and internal quotations omitted). Federal or state regulation of the choice of economic weapons influences the collective bargaining process. *See N.L.R.B. v. Insurance Agents' Intern. Union, AFL—CIO*, 361 U.S. 477, 490, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960).

> Here, the State statute limits the methods by which the employer can seek and find replacement employees. It is clear that through this statute the State of Hawaii has intruded into the substantive aspects of the bargaining process to an extent Congress has not intended. *Insurance Agents*, 361 U.S. at 498, 80 S.Ct. 419.

> In *Charlesgate Nursing Center v. State of Rhode Island*, 723 F.Supp. 859 (D.R.I.1989), nurses went on strike and the health care institution hired replacement workers. The institution hired workers from an agency in violation of a state law prohibiting the use of third-party services in recruiting or hiring replacement workers during strikes. *Id.* at 860–61. The court upheld the institution's use of the third-party services since the state statute was preempted by federal law. The court held that state statutes that limit the employer's hiring rights to this extent "have much more than a peripheral impact on federal labor law concerns." *Id.* at 866. Rather, "they directly and significantly limit the availability of one of an employer's principal economic weapons." *Id.*

> In *Professional Staff Nurses Association v. Dimensions Health Corp.*, 110 Md.App. 270, 677 A.2d 87 (1996), the nurses of a health-care facility gave the facility a ten-day strike notice. In response, the facility hired replacement workers and intended to contract with a staffing agency to provide more nurses. However, a state statute prohibited recruiting or referring strike replacements, or being employed as a strike replacement via an agency. The court held that this statute was preempted by federal law since it "impermissibly affects the economic tools available to management and labor in collective bargaining." *Id.*, 677 A.2d at 101.

> This case is factually similar to *Charlesgate* and *Professional Staff Nurses Association*, and the court agrees with the holdings and reasoning in those cases.

(Previous Order at 9.)

Defendants argue that many of the cases cited by Plaintiff are from various state and federal district courts and are

not binding on this court. However, Defendants fail to acknowledge that although those cases are not binding on this court, Supreme Court decisions are binding. It is clear to this court that precedent unambiguously requires that Hawaii Revised Statutes Chapter 379–2 be struck down because it is preempted. The various state and federal district court decisions are persuasive to this court because they offer well reasoned opinions in cases factually similar to this case and follow Supreme Court reason and precedent. Thus, this court finds that section 379–2 is clearly preempted by federal law insofar as it is intended to affect and impact conduct by private employers and third party agencies contacted or engaged by them.

## II. *Hawaii Revised Statutes Chapter 379–3; Advertising*

Hawaii Revised Statutes Chapter 379–3 provides that

> If any person advertises for, or seeks employees by means of newspapers, posters, letters, radio, television, or by means of any employment agency to work for him or the person for whom he is acting at any shop, plant, or establishment, while a labor dispute is still in active progress at the shop, plant, or establishment, he shall plainly and explicitly mention in the advertisement or solicitation that a labor dispute exists.
>
> The person soliciting or advertising for employees in the manner set forth herein shall use in the advertisement or solicitation his own name, and, if he is representing another, the name of the person he is representing and at whose directions and under whose authority the solicitation or advertisement is made the appearance of this name in connection with the advertisement or solicitation shall be deemed prima facie evidence as to the person responsible for the advertisement or solicitation.

Haw.Rev.Stat. 379–3.

■ Plaintiff argues that this section is also preempted by federal law. However, this court disagrees.

In *Bardane Mfg. Co. v. Jarbola,* 724 F.Supp. 336 (M.D.Pa.1989) the court found that federal law does not preempt the state statute which required employers to notify potential replacement employees that there is a labor dispute and that employment offered is to replace employees involved in a labor dispute. The court held that the statute would not have a serious impact upon labor relations and the state had a specific interest in "maintaining truthful and honest advertising in the recruitment of employees and in maintaining community peace in the face of labor strife." *Id.* at 342.

Plaintiff relies on *International Union, United Auto., Aerospace and Agr. Implement Workers of America v. C.M. Smillie Co.,* 139 Mich.App. 731, 362 N.W.2d 780 (1984), in which the court found that a provision of the Strikebreakers Act, which required the employer to notify potential replacement workers that employment was offered in place of workers involved in a strike or lockout, was unconstitutional within meaning of the NLRA. *See also People v. Federal Tool and Plastics, Division of V.C.A.,* 62 Ill.2d 549, 344 N.E.2d 1 (1975) (the court held that the state statute which required notice that a strike is in progress in any advertisement for replacement employees encumbered the employer's right to hire employees and impaired the balance struck by Congress).

However, this court finds the *Smillie* case unpersuasive. Section 379–3 merely requires the employer to mention in its advertisement for replacement workers that a labor dispute currently exists. The State has a legitimate interest in requiring truth in advertising and this interest is served by requiring the employers to candidly disclose the current situation. *Building and Construction Trades Council of the Metropolitan District v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc.,* 507 U.S. 218, 227, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993) (the Supreme Court has "held consistently that the NLRA was intended to supplant

state labor regulation, not all legitimate state activity that affects labor."). This is especially important because Hawaii is in an island state and thus in a unique situation because employers, such as Plaintiff, often have to look to the mainland United States in order to find skilled and experienced replacement workers. It is unlikely that potential replacements living on the mainland United States will have knowledge of the strike and thus may move to Hawaii only to find they do not have a job because the strike settled or ended. Section 379–3 gives the potential replacement "full information about the type of employment available to them before they possibly place themselves in untenable positions." *Bardane* 724 F.Supp. at 342.

Second, requiring truthful advertising does not affect the employers ability to find replacements. Plaintiff did not provide any evidence that this section interferes with their right to hire replacement workers. Plaintiff also stated that a prudent employer may very well include the fact that there was a labor dispute in the advertisement in order to avoid any accusations of fraud or misrepresentation. Thus, there is only a minor or indirect impact on the bargaining process because the employer is still entitled to advertise for replacement workers, the statute merely requires that such advertisement be truthful. *See Id.* This court finds that section 379–3 is not preempted by federal law.[3]

### CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

---

[3] Defendants do not assert that Plaintiff lacks standing to challenge section 379–3. However, questions have arisen as to whether Plaintiff can establish the "injury in fact" required for standing. Since the record is not clear as

to what steps were or were not taken to promote advertising or to prepare an advertisement and since the court has determined that section 379–3 is not preempted by federal law, the court need not reach this issue.